## Charles Merrill v. William Humphrey, Auditor-General, and others.

*Supervisor : Assessment for taxation : Excessive tax: Injunction.* If the supervisor of a township, in making the assessment of property for taxation, shall fraudulently, and with a view to impose upon an individual more than his just proportion of the public burden of taxation, assess the property of such individual above its value, and relatively above the other assessments on his roll, the party aggrieved may have an injunction to restrain the collection of the excessive tax.

*Bill to restrain collection of excessive tax : Duty of injunction-master : Condition of relief : Decree in such case.* A property-owner, seeking to enjoin the collection of taxes on the ground that the amount is excessive, should show by his bill, as near as may be practicable, what amount is just, and what excessive, and he should pay to the proper officer the amount which he concedes to be properly chargeable against him. In the case of a personal tax, a preliminary injunction should not be awarded in such case, except upon the terms that the whole amount in dispute be paid into court, or proper security given for its ultimate payment if it shall be decreed by the court; and in any other case, the officer allowing an injunction has a discretion to require such security, which it may sometimes be proper he should exercise.

He who seeks equity must do equity; and he who seeks to enjoin the collection of an excessive tax, must be required as a condition of relief to pay such amount as is just,

Where, therefore, a bill was filed to restrain the collection of an excessive tax, and the court found the tax to be excessive, and thereupon made a decree perpetually enjoining the collection, not only of the amount that was excessive, but of the whole tax, it was held that the decree was wholly unwarranted, and it was thereupon reversed.

*Heard November 3. Decided November 29.*

Appeal in Chancery from Osceola Circuit.

*C. C. Fuller* and *F. H. Canfield,* for complainant.

*S. F. Dwight* and *Dwight May, Attorney-General,* for defendants.

COOLEY, J.

A short statement of this case is, that it is a bill filed to restrain the auditor-general and the county treasurer of Osceola county from proceeding to sell the lands of complainant, situated in said county, for the taxes assessed thereon for the year 1869. The complainant alleges that

the supervisors of the several townships in which his lands are situated, fraudulently assessed them above their value, and relatively very much beyond the assessment of other property, for the purpose of relieving resident tax-payers from their proportion of the taxes. He avers that he has ever been ready and willing, and by his bill offers, to pay his just proportion of said taxes whenever the same shall be properly and legally assessed, but he submits that the tax so assessed is unjust, inequitable, and illegal, and he prays a perpetual injunction against proceedings for their collection. The attorney-general demurred to the bill, and the court below overruled the demurrer, and made a decree that the tax complained of be set aside, canceled, and declared void, and that the lands be declared free from the lien thereof.

It is impossible to sustain this decree. Accepting to the fullest extent, as we must upon demurrer, the truth of the matters alleged in the bill, there is no equity in relieving the complainant altogether from the payment of taxes upon his lands. He owes to the state, county and township the same duty, and is under the same obligation with every other property-owner therein; and the attempt by an official to exact from him more than is just, will not excuse him from bearing the burden so far as it is just. The state must give him a remedy against oppression, but it is not bound to reward him because a wrong has been meditated which had him for its object. The state cannot warrant the integrity of every inferior municipal officer, in whose selection its citizens generally have had no choice; and if it could, its responsibility ought not to exceed that which an individual would be under in the like circumstances, which could only be to make good to the party what he may have suffered by the wrong; which, in this case, at the time the decree was rendered, was nothing. Certainly, the offer of the complainant to pay what is just, cannot

excuse him altogether from making any payment. The most that he can claim under any circumstances, is that the state shall prevent the meditated injury, and relieve his land when its proper burden shall have been discharged. It follows that the decree appealed from must be reversed.

It remains to be seen whether the case made by the bill would have entitled the complainant to any relief whatever; for if it would, it may be proper to shape our decree differently from what we otherwise should. The attorney-general insists that an assessment for the purposes of taxation is a proceeding *quasi* judicial in its nature; the valuation being confided to the judgment and discretion of the assessor; and that, as the statute has provided for no review of his decision by the courts, it is not competent to appeal to them for redress, upon allegations impugning the fairness of his conclusions. And he very properly and strongly sets forth the evils that may arise if the process of injunction shall be employed to stay the collection of 'the public revenue whenever the judgment of the tax-payer regarding relative values may so far 'differ from that of the assessor that he is led to suspect favoritism and partiality.

That this process may be employed to an extent that shall prove embarassing to the public authorities is quite possible; and that fact should make us hesitate long and consider the subject fully in all its bearings, before sustaining a jurisdiction that shall appear in the least doubtful or unnecessary to the due protection of individual rights.

And we agree fully with the attorney-general, that the courts cannot sit in judgment upon supposed errors of the assessor, and substitute their own opinions for the conclusions he has drawn, where it is his judgment, and not theirs, to which the subject has been confided by the law.

But it remains to be seen whether what is sought here is a review of the assessor's judgment. The charge is, that

the several supervisors have purposely assessed the property of the complainant beyond its value, and above the assessment of other persons, with a fraudulent intent to compel the payment by him of an undue proportion of the public taxes. The demurrer confesses the charge, so that we are not troubled with any collateral questions or inquiries into matters of fact. It is admitted that the supervisors have not brought their judgment to bear upon the question of value, but have set aside and disregarded their duty for the express purpose of perpetrating a wrong upon an individual. The question then, is this: A public officer being empowered by law to apportion certain burdens among the citizens as in his judgment shall be just, being actuated by a fraudulent purpose, instead of obeying the law disregards its mandate, declines to bring his judgment to bear upon the question submitted to him, and arbitrarily and with express reference to defeating the ends at which the law aims, determines to impose an excessive burden upon a particular citizen: Has this citizen any remedy against the threatened wrong?

We think this question can admit of but one answer. A discretionary power cannot excuse an officer for refusal to exercise his discretion. His judgment is appealed to,—not his resentments, his cupidity or his malice. He is the instrument of the law to accomplish a particular end through specified means, and when he purposely steps aside from his duty to inflict a wanton injury, the confidence reposed in him has not disarmed the law of the means of prevention. His judgment may indeed be final if he shall exercise it, but an arbitrary and capricious exertion of official authority, being without law, and done to defeat the purpose of the law, must, like all other wrongs, be subject to the law's correction.

There is no function of government which requires more

care, prudence and caution for its legal exercise, than that of taxation. The very nature of the power to tax is so general, so sweeping, so pervading, and oftentimes its exercise is so onerous, that special cautions are prescribed to prevent abuse, extortion and oppression. In many cases these fail of their object; and nothing is better understood than that it is impossible that tax laws shall in all instances operate equally and justly. But any intentional favoritism, even though from motives of public interest, if without express authority of law, will render void the tax proceedings. This has been held where the property was exempted by the taxing officers in order to encourage the erection of a public hotel; the burden taken from this being imposed upon the public at large.— *Weeks v. Milwaukee, 10 Wis., 242,* approved in *Hersey v. Supervisors, etc., 16 Wis., 185.* So the imposition of the burden in disregard of any rule of uniformity, is always held unwarranted.— *Knowlton v. Supervisors, 9 Wis., 410; Motz v. Detroit, 18 Mich., 495; Bay City v. State Treasurer, 23 Mich., 499.* And some cases have gone so far as to hold that where the legislature, unjustly, and with the improper motive of increasing the revenues of a city, have brought within its limits, and subjected to its taxation, property purely agricultural in its nature, and so situated as not to receive the benefits of city government, conveniences and regulations, the courts might interfere and restrain city taxation upon such property.— *Covington v. Southgate, 15 B. Monr., 491; Arbegust v. Louisville, 2 Bush, 271; Morford v. Unger, 8 Iowa, 82; Langworthy v. Dubuque, 13 Iowa, 86; Fulton v. Davenport, 17 Iowa, 404; Bradshaw v. Omaha, 1 Neb., 16.* It may be questionable, perhaps, whether these last cases have not gone too far; but the ruling that fraudulent taxation should be restrained, wherever the case is such that the motive can be legally inquired into—as it always may be in the case

of the subordinate agencies—is in our opinion very clearly sound and wholesome.

What the details of the relief shall be, is not so clear. We have already said that the complainant should be required to do equity as a condition of relief. What is just to the public cannot be done unless he pays within due time such proportion of the tax assessed upon him as he concedes to be fair; and we think this payment should be required by the injunction master to be made to the proper officer as a condition to the allowance of injunction. To this extent, the case is within the principle of *Conway v. Waverly, 15 Mich., 257,* and *Palmer v. Napoleon, 16 Mich., 176,* heretofore decided by us, and of several Wisconsin cases, of which *Hersey v. Supervisors, etc., supra,* is one. Such payment will prevent the proceeding being unnecessarily embarrassing to the public authorities, and if it should be thought that the complainant would be likely to err in his own favor in the estimate he would make, the power the court would have to impose costs upon him, or to deny him costs in case his offer should prove unreasonably small, would perhaps be a sufficient protection against such estimates. We also think that in any such case, if personal taxes are involved, the amount disputed should either be required to be paid into court, or security should be exacted for its payment, if so decreed by the court; and the injunction master would have a discretion to require such security in other cases, which it might sometimes be proper that he should exercise. We think such precautions are only reasonable where interference with the collection of the public revenues is solicited; especially where the grounds of relief must depend upon questions of fact, which questions must be determined upon evidence which, from the very nature of the case, must be wanting in great measure in the elements of certainty.

As we find, therefore, that the case is one in which, upon a proper bill, relief may be had by the complainant in equity, we shall, in reversing the decree, order the bill to be dismissed without prejudice. The defendant will recover his costs of both courts.

The other Justices concurred.