MITCHELL *v.* CITY OF NEGAUNEE.

1. MUNICIPAL CORPORATIONS — ELECTRIC LIGHTING — VALIDITY OF CONTRACT.

In the absence of statutory restrictions, a municipal contract for electric lighting is not invalidated by the fact that the city has no money on hand, at the time the contract is made, which can lawfully be applied to such purpose.

2. SAME—SPECIAL ELECTION—CHARTERS.

The city of Negaunee was authorized under its charter, and the provisions of Act No. 186, Pub. Acts 1891, as amended, to submit the question of acquiring an electric light plant to the electors at a special election.

3. SAME—VACANT LANDS—TAXATION.

Vacant lands included within the corporate limits of a city, but so remote as to receive no benefit from the installation of a plant for electric lighting, are yet subject to taxation for the improvement, if the legislature, in the exercise of its discretionary authority to determine and establish taxing districts, makes no discrimination in their favor.

4. SAME.

It is within the province of the legislature to confer upon municipalities, under proper restrictions, the right to install plants for municipal lighting and to furnish light to their citizens.

Appeal from Marquette; Stone, J. Submitted April 16, 1897. Decided June 7, 1897.

Bill by Samuel Mitchell and others against the city of Negaunee, the Arbuckle-Ryan Company, and the Ft. Wayne Electric Corporation, to restrain the carrying out of certain contracts for the establishment of an electric light plant. From a decree dismissing the bill, complainants appeal. Affirmed.

*Hayden & Young,* for complainants.

*F. A. Bell* ( *Clark & Pearl,* of counsel ), for defendant city.

*F. D. Mead,* for other defendants.

MOORE, J. The city of Negaunee has a population of about 6,000 people. In 1896 it made a contract with the Arbuckle-Ryan Co. for a steam plant complete, for $3,474. At the same time it made a contract with the Ft. Wayne Electric Corporation for an electric plant complete, at a cost of $6,500. This proceeding is brought by the complainants, who are large taxpayers, to restrain the carrying out of these contracts. The circuit judge, after hearing the proofs in open court, dismissed the bill. Complainants appeal, assigning as grounds of their appeal:

1. The contracts were vitiated by the fraudulent conduct of the council, engineer, and the two contractors.

2. There was no money on hand in the treasury which could lawfully be applied to the purpose of installing an electric plant.

3. The electors could not authorize the installing of an electric plant at a special election.

4. The city of Negaunee has no power, and the legislature cannot confer upon it power, to tax lands which can receive no benefit, for the installation of an electric light plant to do municipal lighting, and to engage in the supplying of lights to private parties.

Taking these propositions up in the order in which they are presented, a careful examination of the record does not, in our judgment, establish any such fraud in relation to these contracts, or in the proceedings leading up to them, as would warrant a court in restraining the execution of them for that reason.

As to the proposition that there is no money on hand that can be applied to these contracts, there is no suggestion that there is any requirement in the charter, nor has any provision of law been called to our attention requiring, that the money shall be in the treasury before a contract of this kind can be entered upon. It is not necessary to discuss the claim that a sufficient amount of money arising from the liquor tax is now on hand, or will be in the treasury in time to meet the terms of the contracts.

This brings us to the next question. Can the electors

authorize the installation of this plant at a special election? A special election was called, at which a large majority of the electors voted in favor of establishing the plant. If the question was one that could be submitted at a special election, it was properly submitted, carried, and canvassed. The circuit judge found that Act No. 186, Pub. Acts 1891, as amended, and the provisions of the charter, authorize the electors to provide for the installation of such a plant at a special election, when ordered in the manner in which the special election was held. We think he was right in his conclusion. *George* v. *Electric Light Co.*, 105 Mich. 1.

We now come to the important question in the case. Negaunee has been incorporated as a city a good many years. Lands of the complainants, which were unplatted, vacant, wild lands, were inside the corporation prior to 1891. In that year the area of the city was greatly extended by the provisions of an amended charter. At this time a still larger quantity of complainants' lands was included in the corporate limits. So far as the record discloses, no complaint has been made of this action until the filing of this bill. It is now claimed that the lands owned by the complainants which are not city lots, some of which are not improved, most of which are so remote as not to be benefited by electric lights, cannot be taxed to install a plant which is to be used not only to light the streets and alleys of the city, but also to furnish lights to private parties. It is urged that the right of taxation was never meant to be used to the detriment of the citizen, but for his benefit; that taxes can be imposed only for a public, and not a private, purpose. It is the contention that the taxing district in which the tax may be levied should be limited to the locality which is to be benefited by the expenditure of the tax, and that, as these lands will not be benefited by the installation of this plant, it is not right to tax the owners of them. Complainants say that neither the legislature nor the municipality can tax vacant lands for such purposes; citing a number of author-

ities, and, among others, *Morford* v. *Unger*, 8 Iowa, 82; *Langworthy* v. *City of Dubuque*, 13 Iowa, 86; *O'Hare* v. *City of Dubuque*, 22 Iowa, 144; *Deeds* v. *Sanborn*, 26 Iowa, 419; *Deiman* v. *City of Ft. Madison*, 30 Iowa, 542; *City of Covington* v. *Southgate*, 15 B. Mon. 491; *Arbegust* v. *City of Louisville*, 2 Bush, 271.

The Iowa cases fully sustain the contention of counsel, but as long ago as *Merrill* v. *Humphrey*, 24 Mich. 170, Justice COOLEY, after quoting most of these cases, expressed a doubt as to whether they had not gone too far, and we now think they are clearly against the weight of authority. Cooley on Taxation (2d Ed., page 157) reads as follows:

"City boundaries having been extended so as to embrace the lands of parties who insisted that their premises were agricultural lands merely, and would receive no benefit from the city government, such parties sought the protection of the courts, and prayed for injunction to restrain the imposition upon them of any tax in excess of what they would have been chargeable with had the boundaries not been extended to embrace them. It is to be observed of such cases that the legislature, which alone had authority to determine and fix the proper bounds of the municipal divisions of the State, and also to establish the taxing districts, had proceeded to do so, and, in fixing the city boundaries without any provision for a discrimination in the taxation of property within them, had, in effect, determined that no such discrimination should or ought to be made. The whole subject was one committed by the Constitution exclusively to the judgment and discretion of the legislature, whose members, as in other cases of legislation, would make inquiry into the facts in their own way, and act upon their own reasons. No question could be made of the complete legislative jurisdiction over the case, and, if the action was unfair, and led to unequal and unjust consequences, it seems difficult to suggest any ground upon which it could be successfully assailed in the courts that would not warrant a judicial review of legislative action in every case in which parties complain of injustice and inequality. Nevertheless, in some cases the courts have considered themselves warranted in inquiring into the facts, in order to determine

whether, in their judgment, the extension of municipal boundaries was fairly warranted; and, having reached the conclusion that it was not, and that the extension was made for the purpose of subjecting to taxation adjacent property that would not receive the benefits of municipal government, and was not in fact urban property, they have undertaken to protect the owners of property thus unfairly brought in against the unequal taxation to which the legislation would expose them. In doing this they have not assumed to nullify the legislative action in extending the municipal limits, but they have undertaken to modify and relieve against its consequences, and to do this upon the express ground that the motive which has influenced the legislation was not legitimate. As the point is stated in one case, it is the palpable perversion of the power to tax which justifies the judicial interference. Some of these decisions are made by very able judges, whose opinions are always entitled to the highest respect; but it seems difficult to harmonize them with the conceded principles governing the law of taxation, for (1) they do not question legislation as being in excess of legislative authority, as might be done where taxes are voted for a purpose not public, but they leave the legislation to stand, and only interfere to qualify its effect, on the ground that it has been adopted on improper grounds, and will operate unequally. (2) This is done on an inquiry into the facts, and a substitution of the judicial conclusion for the legislative on a subject not at all judicial; a subject, too, — the proper limits of city extension, — upon which persons are certain to differ widely, and where an inquiry into the facts after the judicial method of an examination of witnesses is usually much less satisfactory than that personal knowledge and investigation which legislators are supposed to possess or to make. This is certainly laying down a rule which cannot be applied generally, it being admitted that the judiciary has no general authority to correct the injustice of legislative action in matters of taxation; and the weight of authority clearly is that, as regards these cases, the determination of the legislature is conclusive."

This is undoubtedly according to the great weight of authority.

The inquiry naturally arises, can the legislature authorize municipalities to own electric lighting plants which

shall furnish not only the lights needed by the municipality, but lights to its citizens? Act No. 186, Pub. Acts 1891, authorizes, in terms, certain municipalities to construct electric lighting plants. Act No. 139, Pub. Acts 1893, provides "that it shall be lawful for any city or incorporated village in this State, not having more than 8,000 inhabitants, which own and operate works for the purpose of supplying such city or village with electric light, and lighting their streets and other public places with electric light, to furnish and supply electric light to the inhabitants of such cities or villages, upon such terms and conditions as the common council may deem expedient." Act No. 41, Pub. Acts 1895, authorizes cities and villages not having more than 10,000 inhabitants to furnish lights to the citizens. These provisions will stand if furnishing electric lights is a public service. This question arose recently in Massachusetts. The house of representatives of that Commonwealth asked the opinion of the supreme court upon this question: Is the furnishing of electric lights a public service? The court replied in part as follows:

"We have no doubt that, if the furnishing of gas and electricity for illuminating purposes is a public service, the performance of this service can be delegated by the legislature to cities and towns for the benefit of themselves and their inhabitants, and that such cities and towns can be authorized to impose taxes for this purpose upon their inhabitants, and to establish reasonable rates which the inhabitants who use the gas or electricity can be compelled to pay. * * * The maintenance of public streets and buildings is a public service, and it may be reasonably necessary to light them, in order that the greatest public benefit may be obtained from using them. To say nothing of the usefulness of lighting streets as a means of promoting order and of affording protection to persons and property, the common convenience of the inhabitants may require that they be lighted. Cities and thickly-settled towns have for a long time been accustomed to light their public buildings and some of their streets at the public expense. If the streets and public buildings are to be lighted, the means is a matter of ex-

pediency.    If the legislature can authorize cities and
towns to light their streets and public buildings, it can
authorize them to do this by any appropriate means which
it may think expedient.    As a question of constitutional
power, we cannot distinguish. the right to authorize cities
and towns to buy gas or electricity for their use from the
right to authorize them to manufacture it for their use.
\* \* \*

, "The maintenance of sewers and drains is a public ser-
vice.    One object is the preservation of the public health;
but, apart from this, they are of great convenience to the
inhabitants whose estates can be drained by them.    It is
impracticable for every owner of land in cities and towns
to construct and maintain sewers and drains exclusively
on his own account.    They cannot ordinarily be con-
structed over any considerable territory without using the
public ways or exercising the right of eminent domain.
They are, therefore, regarded as of common convenience,
and are constructed at the public expense.

"The furnishing of water for cities and towns for domes-
tic use affords, perhaps, the nearest analogy to the subject
we are considering.    It was long ago declared that 'the
supply of a large number of inhabitants with pure water is
a public purpose.'    *Lumbard* v. *Stearns*, 4 Cush. 60.    The
statutes are well known which authorize cities and towns
to maintain waterworks for supplying their inhabitants
with water, and the constitutionality of these statutes has
not been doubted.    Water cannot ordinarily be supplied
to a large city or town from ponds or streams without the
exercise of the right of eminent domain and the use of the
public ways.    Every inhabitant needs water, and often
the only practicable method of obtaining it is by the
agency of corporations or of the municipality.    The land
for the public ways having been taken for a public use, it
may be subjected to other public uses, but it cannot be
subjected to strictly private uses without the consent of
the owners of the fee when the fee remains in the abutters.
There is, therefore, often a necessity of having water,
common to the inhabitants of a community, which cannot
well be met except by the exercise of public rights, and
therefore the furnishing of water has been considered a
public service.    In the case of water, as in that of sewers
and drains, a portion of the service is exclusively public,
and the benefit to individuals cannot be separately esti-
mated from that of the community; but a part of the ser-
vice is rendered to individuals, and the benefit of this can

be separately estimated. The inhabitants are, therefore, required to pay for the water furnished for their private use, and special assessments for the use of sewers and drains are laid upon estates specially benefited; and for the same reasons, while in laying out highways the expense is public, betterment assessments may be laid upon the owners of lands specially benefited.

"Artificial light is not, perhaps, so absolutely necessary as water, but it is necessary for the comfortable living of every person. Although artificial light can be supplied in other ways than by the use of gas or electricity, yet the use of one or both for lighting cities and thickly-settled towns is common, and has been found to be of great convenience, and it is practically impossible for every individual to manufacture gas or electricity for himself. If gas or electricity is to be generally used in a city or town, it must be furnished by private companies or by the municipality, and it cannot be distributed without the use of the public streets or the exercise of the right of eminent domain. It is not necessarily an objection to a public work maintained by a city or town that it incidentally benefits some individuals more than others, or that from the place of residence, or for other reasons, every inhabitant of the city or town cannot use it, if every inhabitant who is so situated that he can use it has the same right to use it as the other inhabitants. It must often be a question of kind and degree whether the promotion of the interests of many individuals in the same community constitutes a public service or not. But, in general, it may be said that matters which concern the welfare and convenience of all the inhabitants of a city or town, and cannot be successfully dealt with without the aid of powers derived from the legislature, may be subjected to municipal control when the benefits received are such that each inhabitant needs them, and may participate in them, and it is for the interest of each inhabitant that others, as well as himself, should possess and enjoy them. If the legislature is of opinion that the common convenience and welfare of the inhabitants of cities or towns will be promoted by conferring upon the municipalities the power of manufacturing and distributing gas or electricity for the purpose of furnishing light to their inhabitants, we think that the legislature can confer the power." Opinion of Justices, 150 Mass. 592.

See 2 Dill. Mun. Corp. § 692, note; *Rushville Gas Co.*

v. *City of Rushville*, 121 Ind. 206 (16 Am. St. Rep. 388);
*City of Crawfordsville* v. *Braden*, 130 Ind. 149 (30
Am. St. Rep. 214). In this case the recent authorities
are referred to, and reviewed. *State* v. *City of Toledo*,
48 Ohio St. 112; Cooley, Tax'n (2d Ed.), p. 134.

It is conceded by counsel for complainants that munici-
palities may furnish water to their citizens. They seek
to distinguish the right to furnish water from the right
to furnish light by saying that water is a necessity for
all, but that electric light is a luxury. It will hardly
be contended that the necessities of modern life do not
require light as well as water, and we think the reasoning
of the cases cited shows conclusively that it is within
the legislative province to confer upon municipalities the
right to furnish both under proper restrictions.

The decree is affirmed, with costs.

The other Justices concurred.