PIONEER IRON CO. *v.* CITY OF NEGAUNEE.[1]

1. MUNICIPAL CORPORATIONS — TAXING DISTRICTS — LEGISLATIVE DISCRETION—REVIEW.

   The fixing of city limits and taxing districts is within the legislative discretion, and the determination of the legislature in relation thereto will not be disturbed by the courts.

2. TAXATION—FRAUD—EVIDENCE.

   Complainants filed a bill to restrain the collection of certain taxes against their lands, alleging a willful and fraudulent overvaluation of the same by the assessor and board of review. It appeared from the evidence that the lands were located in a mineral belt, near to developed mines, which had a large output, and that the assessment in question was made against them as mineral lands, instead of as wild lands, as had theretofore been the custom. The assessor and the several members of the board, who had some knowledge of mining and mineral lands, testified that they acted honestly and fairly in the discharge of their duties, and used their best judgment in fixing the valuations; and the opinions of other witnesses as to the value of the lands were conflicting. Complainants were heard at length before the board, but offered no affidavits or sworn witnesses. *Held,* that a finding that the allegations of fraud were not established was warranted.

3. SAME—BOARD OF REVIEW—FINALITY OF JUDGMENT.

   Under Act No. 206, Pub. Acts 1893, § 76, subd. 5, providing that taxes may be held illegal if the supervisor or board of review acted fraudulently, the action of the board, where fraud is alleged, is reviewable in the courts.

Appeal from Marquette; Stone, J. Submitted January 27, 1898. Decided March 29, 1898.

Bill by the Pioneer Iron Company and the Arctic Iron Company against the city of Negaunee and others to restrain the collection of taxes. From a decree dismissing the bill, complainants appeal. Affirmed.

[1] Rehearing denied October 3, 1898.

*Hayden & Young* (*W. P. Healy*, of counsel), for complainants.

*F. A. Bell* (*Clark & Pearl*, of counsel), for defendants.

MOORE, J.   The learned judge before whom the case was tried has so clearly stated the questions involved in the written opinion which he filed that I quote it here:

"The bill of complaint in this case states that the complainants are the owners of the lands described in paragraph 6; that they are situated within the corporate limits of the city of Negaunee; that said lands are for the most part, and always have been, wild and barren, and for many years have been denuded of timber, and lie for the most part at a long distance from any settled or platted portion of said city, and have never been platted; nor have any municipal improvements or charges thereof, such as streets, sewers, lights, police or fire protection, waterworks, or other like improvements, charges, advantages, or benefit, for which money is usually expended in cities, and for which money is and has been expended in Negaunee, and is now being expended, ever been asked for, contemplated, or proposed for the improvement of or benefit to such lands; nor are such lands in such locality, with reference to the platted or populated portion of said city, that they can receive now, or at any time in the future, any benefit or advantage from the expenditure of money in said city for said purposes.

"That, in the spring of 1896, the assessor of said city, and the common council, acting as a board of review, placed and fixed the valuations of complainants' lands at the several sums and values for each parcel as they appear in said paragraph 6.    The bill then proceeds to state the amount of taxes for the different purposes levied in the city to be $57,827.21, and that the total valuation of all the property in said city, as appears by the tax roll, is $1,500,000, and that the city has prepared and placed in the hands of its treasurer its said tax roll for said year, in and by which it has assessed and levied upon the lands of complainants for all said purposes, as stated in said paragraph 6, $3,858.78, upon a valuation fixed at $99,800; that, after the assessment roll of said city had been completed by its assessor, complainants applied to the assessor and the city recorder and the mayor, and to every person who would be likely to have possession of

said assessment roll, for an opportunity to ascertain the valuations placed upon the lands of complainants, but were refused permission to see said assessment roll, and were refused likewise knowledge of valuations so placed thereon, upon complainants' lands; that such refusal upon the part of said city was willful, fraudulent, and wrongful as against the rights of complainants, and prevented them from making a proper showing before said board of review upon the valuations placed upon said assessment roll by the assessor.

"That in the month of July, 1896, the said board of review wrongfully refused to give complainants sufficient opportunity to show to said board of review that said assessments so made by the assessor were grossly in excess of the true cash value of said lands, and that they were assessed relatively much higher than other similar lands of like value in said city, though complainants attempted and requested permission so to do, and that complainants were practically deprived of their day in court thereon, before said board of review, without any fault or neglect on the part of complainants.

"That the values so placed upon complainants' said lands are grossly excessive; that they are greatly in excess of the true cash value of said lands, and are from ten to twenty times greater than values put upon said roll for other lands of like or similar value in said city belonging to other persons, residents of said city, and that they are willfully, fraudulently, and maliciously so unequally assessed; that said assessor, in placing values upon said lands, acted willfully, fraudulently, and maliciously, with an intention to injure complainants thereby, in placing said values grossly in excess of the actual value of said lands, and grossly in excess of the values upon property of like or similar value in said city, owned by residents thereof, and were so willfully, fraudulently, and maliciously fixed by said assessor for the purpose of making complainants pay more than their just proportion of taxes legally leviable on property in said city for the year 1896, and that said assessor did not place said lands upon said assessment roll at their true cash value, nor relatively at their true cash value, according to his best judgment and belief, but conspired with others thereabout to injure and defraud complainants; that said board of review, in its conduct thereinbefore set forth, and in finally fixing said values, and in refusing complainants sufficient hearing thereon, and in refusing to reduce said values, as requested

by complainants, did not use their best judgment thereon, but acted willfully and fraudulently, and with an intention to require complainants to pay more than their just proportion of the taxes legally leviable in said city, and that said values as so levied and fixed by said assessor and board of review are willfully unequal, fraudulent, and void.

"That the highway, fire-department, city, and special taxes are assessed and levied for purely private purposes in the resident portion of said city, and are purely local; that the incorporation of complainants' said lands within the limits of said city for the purposes aforesaid was and is a fraud upon complainants' rights.

"Complainants offer to pay their taxes, assessed upon a proportionate valuation.

"The bill claims that, for the reasons stated, the taxes so levied are fraudulent and void, and constitute an apparent incumbrance and cloud upon complainants' title; and they ask to have them declared such cloud, and removed, and the collection thereof restrained.     The answers deny the substantial allegations of the bill in so far as the over valuations and assessments of complainants' lands are concerned.     The case, being at issue, was heard upon the pleadings, and the testimony taken in open court.

"The right to levy a tax upon these lands for general city purposes having been sustained in the recent case of *Mitchell* v. *City of Negaunee*, 113 Mich. 359, by the Supreme Court, it will not be necessary for this court to spend any time upon that question.

"There was no evidence offered tending to show that the incorporation of complainants' lands within the city limits was fraudulent, and that subject may also be dismissed from consideration.

"The complainants complain that they did not have such an opportunity to examine the roll as the law contemplates. It is very clear that the taxpayer, under our statutes, must be allowed, at some time before the assessment roll is fully completed, the opportunity of seeing what assessments have been made against his property, and the privilege of showing that the proposed assessment is, for any cause, illegal or unjust.     *Woodman* v. *Auditor General*, 52 Mich. 28.     This opportunity is given at the meeting of the board of review.     Under the charter of Negaunee, this board is composed of the common

council. Act No. 288, Local Acts 1895, chap. 8, §§ 2, 3. Its first meetings are on the second Monday of July, and on the day following; and the board is required to proceed to review and examine the roll in accord-ance with the provisions of the general laws of the State. Turning to the general laws (Act No. 206, Pub. Acts 1893, § 29), we find that at this meeting the assessor is required to submit his roll to the board, and the board shall proceed to examine and review the same; and during that day, and the day following, if necessary, said board, of its own motion, or on sufficient cause being shown by any person, shall add to said roll the names of persons, the value of personal property, and the descrip-tion and value of real property liable to assessment, omitted from such assessment roll. They shall correct all errors in the names of persons, in the descriptions of property upon such roll, and in the assessment and valuation of property thereon. The board is required to pass upon each valuation and each interest, and shall enter the valuation of each, as fixed by it, in a separate column. It is evident that it was the intention of the legislature to allow the board, at this first meeting, to perfect the roll by a thorough in-spection of it, and for that purpose the board has the right to use and control the roll. This right must, how-ever, be exercised in a reasonable manner; and no tax-payer should be precluded from a reasonable inspection of the roll, even at this meeting, where it can be done with-out interfering with the work of the board. At the second meeting of the board, it shall, at the request of any person whose property is assessed thereon, or of his agent, and on sufficient cause shown, correct the assess-ment as to such property, in such manner as, in their judgment, will make the valuation thereof relatively just and equal. To that end, said board may examine on oath the person making such application, or any other person, touching the matter. After hearing the evidence in this case upon the subject, I cannot say that the com-plainants did not have a reasonable opportunity to exam-ine the assessment roll. They were heard at considerable length. Many motions to reduce were made and acted upon. In some instances the motion to reduce prevailed, and in some instances it was lost. The complainants did not see fit to offer any evidence before the board, but contented themselves with arguments and protestations. The last afternoon and evening sessions were devoted to

them, and it seems to me that it cannot be said that they did not have their day in court.

"This brings us to the last, and, in my mind, the most important, question in the case: Were the assessments and valuations of the complainants' lands willfully unjust and fraudulent? The ascertainment of the value of taxable property is judicial, and requires the judgment of the assessor under his official oath. *Wall* v. *Trumbull*, 16 Mich. 236; *Woodman* v. *Auditor General*, 52 Mich. 28. The same may be said of the duty of the board of review. The law imposes this duty upon those officers; and if they act in good faith, and exercise their best judgment, mere errors in judgment will not defeat their action. The bill is very plain; and in explicit terms charges these officers not only with unfairness, but with fraud. The burden of proof is on complainants to sustain those charges by a fair preponderance of evidence. Cooley, Tax'n (2d Ed.), 784. It is undoubtedly the law that inequalities in valuation, fixed by design, or effected by resentment, cupidity, or malice, so that the exercise of proper judgment has been departed from, render an assessment void. *Merrill* v. *Humphrey*, 24 Mich. 170. This case was before the Supreme Court upon appeal from a decree overruling a demurrer to the bill; and, no evidence having been taken, the discussion is on the allegations of the bill, which were, of course, taken as true. In *Walsh* v. *King*, 74 Mich. 350, a bill was filed to cancel taxes. The bill was demurred to, and the demurrer was sustained at the circuit, and an appeal was taken from this decree. It was held that where assessing officers, by agreement with the owners of a certain class of property, assess the same at less than its cash value, a taxpayer whose taxes are thereby increased is entitled to relief in equity, and to such a reduction of his taxes as will make his burden of taxation no greater than if said property had been assessed at its fair cash value. The court said: 'This is not a case where the assessing officers, in the exercise of their judgment, have made an honest mistake, but the undervaluation of this property was deliberate, and the result of an agreement, which was fraudulent in law, if not in fact.  *  *  *  Fraud is ever open to remedy in a court of equity, and there can exist no good reason why relief against fraud in taxation, which in the end deprives a man of his property without due process of law, cannot be granted, as well as against any other

fraud.' To the same effect are the following cases: *Solomon* v. *Township of Oscoda*, 77 Mich. 365; *Auditor General* v. *Jenkinson*, 90 Mich. 523; *Auditor General* v. *Prescott*, 94 Mich. 190. In these cases there was either an intentional undervaluation, overvaluation, or omission of property. There was no exercise of that judgment by the officers which the law contemplates. There was intentional favoritism, and, as was said by the court in *Merrill* v. *Humphrey*, *supra*, 'any intentional favoritism, even though from motives of public interest, if without express authority of law, will render the tax proceedings void.'

"The complainants claim to have brought their case within the rules above stated. Have they done so by the evidence? They charge fraud and favoritism, and a scheme on the part of the assessing officers and others to place an unjust and unequal burden upon the complainants. The defendants, upon the other hand, insist that the assessing officers acted in accordance with their best judgment; that for years the property of the complainants had been assessed and valued on the rolls too low, and that complainants had not prior to 1896 borne their just burden of taxation; that, owing to the depression in the iron and general business in the city of Negaunee and vicinity, the value of residence and business property, including the operating mines, had greatly depreciated in value, and that in the assessment of 1896 these facts were all taken into consideration, and while it resulted in raising the valuation of some of the complainants' lands, and lowering that of others, yet that the officers, assessor and board of review, acted fairly, honestly, and in good faith, and that, the duty having been placed on these officers, and they having acted in the exercise of their judgment, their action is final, and that complainants are without remedy; that, it appearing that these officers have acted in the exercise of the duty laid upon them, the subject is not within the revisory power of the court. They cite, as supporting this doctrine, *McDonald* v. *City of Escanaba*, 62 Mich. 555, and *Attorney General* v. *Supervisors of Sanilac Co.*, 42 Mich. 72.

"I have no doubt that the bill of complaint states such a case as would entitle the complainants to relief, were it supported by the evidence. As stated in Cooley on Taxation (2d Ed.), at page 784: 'A tax founded on a fraudulent assessment will be enjoined. An assessment is not

fraudulent merely because of being excessive, if the assess-
ors have not acted from improper motive; but if it is pur-
posely made too high, through prejudice or a reckless dis-
regard of duty, in opposition to what must necessarily be
the judgment of all competent persons, or through the
adoption of a rule which is designed to operate unequally
upon a class, and to violate the constitutional rule of uni-
formity, the case is a plain one for the equitable remedy
by injunction.    So is any case in which a tax is rendered
unequal or unfair by fraudulent or reckless conduct of offi-
cers, or in which the party is deprived by like practices of
important rights which the law intends to secure to him;
such, for instance, as the right of appeal from an assess-
ment, or to be heard by the board of review before his as-
sessment should be raised.   But mere irregularities in the
proceedings of tax officers do not make out fraud, or even
give evidence of it.   And fraud must be alleged and
proved; all presumptions are against it.'

"From the evidence in this case it clearly appears that
there has been much discussion and agitation in Negaunee
upon the subject of the taxation of complainants' lands
and other lands of a like nature.   They are located within
the mineral belt, and are by many persons believed to be
very valuable for mining purposes.   Undoubtedly, this
discussion and agitation have led the assessor and board
of review to raise the valuation of these lands, in the be-
lief that they have not heretofore borne their fair share of
taxation.   The newspaper and other discussions have been
upon both sides of the question, and have, no doubt, at
times been extreme.   The evidence was conflicting as to
the actual value of this class of property.   Actual sales of
property similarly situated were shown to have been made
for cash where prices were obtained above the valuation ·
fixed for assessment; notably those testified to by Samuel
Mitchell and John Q. Adams.   It seems to me that,
although the taxing officers may have in some instances
erred in judgment, yet that they honestly believed that the
lands were really worth what they were assessed at, and
that they acted in good faith, in the exercise of their best
judgment.   They have the right to consult with other
citizens in arriving at the value of this property.   There
is no doubt of the duty of every assessing officer to inform
himself, as far as he can, of the value of each parcel
assessed.   *Sawyer-Goodman Co.* v. *Township of Crys-
tal Falls,* 56 Mich. 597

" It appears that the assessing officers consulted a map or diagram of these lands, with values placed thereon by another person, and that those valuations were generally followed. Yet it is testified to that in every instance the asssesor and board exercised their best judgment, aided, no doubt, by this map and other information. Should the tax be held void for this reason? ˙I think not, in view of all the evidence in the case.

" In this case, if any relief is granted, the court must set aside the entire tax, or, do what is more difficult, fix a basis of taxation, and determine what portion of the tax levied is just. Under the evidence, I do not see my way clear to do either, and must therefore dismiss the bill, with costs to the defendants. Let a decree be prepared accordingly."

One feature of this case was very recently decided by the court in *Mitchell* v. *City of Negaunee*, 113 Mich. 359, where it was held that the fixing of city limits and taxing districts is within the legislative discretion, and the determination of the legislature in relation thereto will not be disturbed by the courts. It is now urged by counsel that this point was not involved in the case. In this, counsel are in error. The question was discussed very fully in the briefs and in the oral arguments of the attorneys. An examination of the opinion will also show that it was not overlooked by the court; and, as to that feature of this case, the case of *Mitchell* v. *City of Negaunee* is controlling.

An examination of the record shows that most of the land described in complainants' bill of complaint, prior to 1896, was assessed as wild land, and not as mineral land. On the roll for 1896 nearly all of these lands were assessed much higher than they had been assessed before, and in some instances many times higher. It is the claim of the assessor that prior to 1896 the lands had not been assessed at anywhere near their value, and that for 1896 they were assessed for what he honestly believed to be their cash value. He testified that he used his best judgment in fixing the valuation, after looking at the lands, considering their situation to other lands, and talking with other per-

sons, and after using such means of getting knowledge as were available to him. The board of review was in session four days, the full time fixed by the charter. The last day its session was extended to nearly 11 o'clock in the evening, to allow the representatives of the complainants to be heard. A good share of the day was given to them. They made arguments and representations to the board, but offered no affidavits or sworn witnesses. The members of the board of review testify that, in the discharge of their duty as a board of review, they acted honestly and fairly, using their best judgment in fixing values, and that they were not actuated by any improper motives in what they did. In the trial of the chancery case, testimony was introduced varying greatly in relation to values. It was the judgment of some of the witnesses for the defendants that a portion of these lands exceeded in value the amount assessed upon the lands. Others of them thought the lands were assessed much too high. In previous years the lands had been assessed upon the basis of their value as wild lands, and for their value as it appeared on the surface. They are held by the complainants as mineral lands. They are in the iron formation, near to developed mines, which have a large output. Men differed in judgment in relation to their value. The assessor was a man who had lived in that vicinity a great many years, and had some knowledge of mining and mineral lands. These lands were near to where the members of the board of review lived. A number of these men had some knowledge of mining and mining lands. The witnesses testified in open court. The trial judge had an opportunity to judge of their intelligence, opportunities of knowledge, and of their truthfulness. His conclusion is that complainants have not established any fraud or conspiracy upon the part of the assessing officer or the board of review. The testimony is not so overwhelming or conclusive the other way that we are led to say he erred in arriving at that conclusion.

It is urged by the defendants that the duty of review-

ing the assessment is reposed in the board of review; that their action is final; and that the court will not substitute its judgment for the action of the board of review, —citing *Attorney General* v. *Supervisors of Sanilac Co.*, 42 Mich. 72; *McDonald* v. *City of Escanaba*, 62 Mich. 555; *Tallmadge* v. *Supervisors of Rensselaer Co.*, 21 Barb. 611; *Smith* v. *Board of Supervisors*, 30 Iowa, 531. Whatever the law may have been prior to 1893, this contention cannot now be sustained, as subdivision 5, § 76, Act No. 206, Pub. Acts 1893, expressly provides that the taxes may be held to be illegal if the supervisor or board of review acted fraudulently. Before a court would be justified in holding a tax to be illegal because the supervisor or board of review has acted fraudulently, that fact should be clearly established by the evidence. We think this has not been done.

Decree is affirmed, with costs.

The other Justices concurred.