CHARLES S. ATHERTON *v.* VILLAGE OF ESSEX JUNCTION.

October Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed January 20, 1910.

*Pleading—"Public Acts"—Village Charter—Judicial Notice— Municipal Corporations— Creation— Taxation— Property Taxable—Farming Lands.*

The charter of a village is a "public act" of which the court will take notice in construing pleadings.

The term "boroughs," as used in chapter 2, §9, of our Constitution, authorizing the incorporation of towns and boroughs, includes villages.

Farming land within the territorial limits of an incorporated village is subject to taxation for general village purposes, though no direct benefit accrues to the owner.

Courts will not interfere with the policy of the Legislature as to the taxation for municipal purposes of property within the municipal limits.

In the absence of any charter or statutory requirement to the contrary, a village may properly vote a tax of a specified per cent. on the grand list "for general village purposes."

APPEAL IN CHANCERY. Heard on demurrer to the bill at the March Term, 1909, Chittenden County, *Taylor,* Chancellor. Demurrer sustained, *pro forma,* and bill dismissed with costs. The orator appealed.   The opinion states the case.

*J. J. Monahan* and *L. F. Wilbur* for the orator.

The municipal taxation of farm land within the municipal limits, for general municipal purposes, where no benefit accrues to the owner, is void, as taking private property for a public use without compensation. *Morford* v. *Unger,* 8 Ia. 82; *Langworthy* v. *Dubuque,* 13 Ia. 86; *Deeds* v. *Sanborn,* 26 Ia. 419; *O'Hare* v. *Dubuque,* 22 Ia. 114; *Winzer* v. *Burlington,* 68 Ia. 279; *Courtney* v. *Jonesville,* 12 B. Mon. 419; *Henderson* v. *Lambert,* 8 Bush. 607; *Sharp* v. *Dunavan,* 17 B. Mon. 232; 15 Enc. 1014-1015; *Mitchell* v. *Davenport,* 34 Iowa 194; *Buel* v. *Ball,* 20 Ia. 282; 2 Dill. Corp. §793 (3rd Ed.) and notes; 15 Enc. 1014; *Durant* v. *Kaufman,* 34 Ia. 194; *People* v. *Bennett,* 29 Mich. 45; *Thomas* v. *Gain,* 35 Mich. 155; *Boody* v. *Watson,* 9 Atl. 798; Cooley Tax. (2nd Ed.) 47-53; *Cheaney* v. *Hooser,* 9 B. Mon. 347; *Arbegust* v. *City of Louisville,* 2 Bush. 271; *City of Covington* v. *Southgate,* 15 B. Mon. 491; Tied. Lim. of Police Power, 478 and note 3; *Dieman* v. *City of Fort Madison,* 30 Ia. 548.

*Martin & Bailey* for the defendant.

If the taxes complained of in the orator's bill are legal, then certainly equity will not interfere; and if such taxes are illegal, then the orator has a complete and adequate remedy at law, and he must resort to his legal remedy. *Henry* v. *Chester,* 15 Vt. 460; *Babcock* v. *Granville,* 44 Vt. 325; *Allen* v. *Burlington,* 45 Vt. 202; *Dyer* v. *School Dist.,* 61 Vt. 96; *Phillips* v. *Montpelier,*

75 Vt. 357; *Green* v. *Mumford,* 5 R. I. 472; *Sheldon* v. *School Dist.,* 25 Conn. 224; *Dodd* v. *Hartford,* 25 Conn. 232; *Arnold* v. *Middletown,* 39 Conn. 401; *Rowland* v. *School District,* 42 Conn. 30; *Savings Bank* v. *Lawler,* 46 Conn. 243; *Brewer* v. *Springfield,* 97 Mass. 152; *Loud* v. *Charlestown,* 99 Mass. 208; *Hunnewell* v. *Charlestown,* 106 Mass. 350; *Norton et al.* v. *Boston,* 119 Mass. 194; *Greenhood* v. *MacDonald,* 183 Mass. 342; *Webber Lumber Co.* v. *Shaw et al.,* 189 Mass. 366; *Savings Bank* v. *Portsmouth,* 52 N. H. 17; *Brown* v. *Concord,* 56 N. H. 375; *Perley* v. *Dolloff,* 60 N. H. 504; *Guest* v. *Brooklyn,* 69 N. Y. 506; *Kelley* v. *Pittsburgh,* 85 Pa. 170; *Younsblood* v. *Sexton,* 32 Mich. 406; *Dows* v. *Chicago,* 78 U. S. 65; *State Railroad Tax Cases,* 92 U. S. 575; *McCoy* v. *Chillicothe,* 17 Am. Dec. 607.

The question of the taxation of farm land for municipal purposes is for the Legislature and not for the courts. *Henry* v. *Chester,* 15 Vt. 460; *Kelley* v. *Pittsburgh,* 85 Pa. 170; *Guest* v. *Brooklyn,* 69 N. Y. 506; *Briggs* v. *Russellville,* 34 L. R. A. 193.

HASELTON, J. This is a bill of complaint brought to the court of chancery for Chittenden County. The cause came on for hearing on demurrer, and without argument and strictly *pro forma* the demurrer was sustained and the bill dismissed. The case is here on appeal by the orator. The material allegations of the bill, which in this hearing are to be taken as true, will be recited.

In November, 1892, by direct act of the Legislature, the Essex Junction Graded School District in the Town of Essex was incorporated and made a body politic by the name of The Village of Essex Junction. The management of the affairs of the village was vested in a board of trustees, and the village was authorized to make, alter and repeal by-laws relating to streets, highways, sidewalks, alleys, commons, parks, sewers, water supply, fire protection, the watching and lighting of streets, and for other purposes. The village so incorporated was made one of the highway districts of the Town of Essex, and it was provided that the trustees should appoint a superintendent of streets for such district, and that highway taxes in such village and district should be used and applied by such superintendent under the direction of the trustees in building and maintaining the highways, streets, walks, alleys, sidewalks, lanes and sewers of the

village. The offices of clerk, treasurer, collector and fire engineers were created, and the trustees were empowered to appoint police officers, who by virtue of their appointment should have the usual authority of such officials. It was provided that the village might, for any of the purposes mentioned in the act, assess taxes on the taxable polls of residents of the village and upon the list of real and personal estate taxable therein. The charter of the village is a public act and as such is to be taken notice of in considering the pleadings. *Village of Winooski* v. *Gokey*, 49 Vt. 282. This being so the act itself has been referred to in making the above recitals, although the bill itself appears to set out the provisions of the charter with sufficient fullness and accuracy. The bill recites the acceptance of the charter.

The orator, Charles S. Atherton, and his wife, Addie N. Atherton, reside on a farm of about one hundred and forty-eight acres situated within the limits of the village as incorporated. This farm is about a mile from what the orator denominates the "village proper," a phrase which is understood to mean the same as the words "physical village" as used in the opinion in *Noyes* v. *Village of Hyde Park*, 73 Vt. 261. This farm is used for agricultural purposes exclusively, and has not received and cannot have any benefit from the water supply, sidewalks, and other improvements, nor from the watching and lighting of the streets. Of the farm above mentioned, the orator owns fifty acres and the orator's wife ninety-eight acres. In the year 1907 the orator's grand list was twelve dollars and that of his wife twenty-five dollars. In 1907 the orator paid, under protest, eighty-eight cents, his share as assessed for that year of the expense of the village water supply, one dollar and forty-six cents as his like share of the appropriation for street lighting purposes, and twenty-four cents as his like share of the appropriation for sidewalk purposes. In the same year the orator's wife, under like protest, paid, for the corresponding purposes, one dollar and eighty-three cents, two dollars and twenty-five cents and fifty-one cents respectively. Both the orator and his wife were willing to pay and offered to pay, and tendered without protest, all of the village taxes for the year 1907, except the sums mentioned. But the tender of a part of the taxes was refused and so the whole sum was paid under protest. This bill was brought July 21, 1908, and therein the

orator shows that his grand list as made up for that year is twelve dollars, that his wife's is thirty dollars, and that the trustees of the village had assessed the orator two dollars and sixteen cents on account of the water tax and for street lighting purposes, and twenty-four cents for sidewalk purposes, and that for the same purposes his wife had been assessed five dollars and forty cents and sixty cents respectively, and that while both the orator and his wife were willing and ready to pay all other village taxes, except those named, the said village corporation, through its officers, was threatening to enforce the collection of said taxes named and to that end to sell and sacrifice the orator's property and his wife's property.

The bill sets out the interest of the orator as a husband of Addie N. Atherton in the property for which she is assessed and avers that the burden of the taxation of her property falls upon the orator. The orator avers that the village corporation will, unless enjoined, continue through all future time to tax the orator and his wife on the property above referred to for the purposes of maintaining the water supply system, lighting the streets and repairing the sidewalks of which the orator can have no benefit. The orator avers that he has requested the village to extend the system of street lighting to his farm, but that the village has neglected and refused so to do; that he has requested the village not to assess him and his wife on their respective grand lists, on account of the water supply, street lighting and sidewalks of the village, but that the village insists upon so doing and will continue so to do unless enjoined, and that the taxation and threatened taxation for those purposes greatly depreciates the value of the farm in question and renders it unsalable and results in irreparable injury to the orator. The orator further shows that the village in raising taxes always votes a lump sum and a certain per cent. on the grand list for general village purposes and does not designate the separate objects for which the taxes are voted, and that so it is impossible to know for what objects the tax is raised nor to show the invalidity of the tax without resorting to extrinsic evidence, and that for those reasons the orator is compelled to resort to a court of chancery for relief, and that resort, from year to year, to suits at law to recover back taxes improperly assessed would require a multiplicity of suits, that the situation is oppressive and

creates a cloud upon the title to the farm and works an irreparable injury to the orator.

The orator prays that the defendant be enjoined from assessing any tax on his grand list, and that of his wife, for the year 1908, and in the future, for the purposes of the water supply, street lighting and sidewalks mentioned, and that it may be decreed that the defendant repay to the orator all the money paid, under protest, by himself and his wife as taxes in 1907 and 1908 for the purposes of the water supply, street lighting and sidewalks mentioned, and for other purposes. The orator also prays for general relief.

The Constitution, Chap. 2, §9, authorizes the General Assembly to constitute towns, boroughs, cities and counties, and the bill does not question the authority of the Legislature to incorporate the Village of Essex Junction and to include and exclude territory as it did. In borrowing the constitution of Pennsylvania of 1776 we got the provision above referred to, and boroughs include villages. *Dempster* v. *United Traction Co.,* 205 Pa. St. 70, 54 Atl. 509, 503.

*Noyes* v. *Village of Hyde Park,* 73 Vt. 261, was a proceeding in the nature of a *quo warranto,* the gist of which was the claimed illegal action of selectmen under ostensible legislative authority in including a farm within village limits and thereby subjecting it to village taxation. There the selectmen in including the land in question in village limits had undertaken to proceed under statutory provisions for the establishment of villages, provisions substantially like those found in chapter 158 of the Public Statutes, and the claims there made were that the statute was an unconstitutional delegation of legislative power, and that the statute itself did not authorize the inclusion of the farm lands in question within village limits. That interesting case went off because of the death of the complainant, and the consequent dismissal of the proceeding on the ground that the cause of action did not survive. The case is referred to for the purpose of making clear by exclusion the claims of the orator in the case now before us. The claim of the orator here is that notwithstanding the valid incorporation of the Village of Essex Junction and the valid inclusion of the farm in question within the corporate limits of the village, taxes cannot be levied upon this farm land for municipal purposes

which are of no benefit to the owners thereof. The doctrine invoked is that of the Supreme Court of Iowa, and has been asserted in that state in a long line of decisions. That doctrine is stated thus: ''The mere fact that lands are included within the limits of a municipal corporation does not authorize their taxation for general city purposes. Under certain conditions they are exempt therefrom. These conditions are such that the property proposed to be taxed derives no benefit from being within the city limits.'' *Taylor* v. *City of Waverly*, 94 Iowa 661, 63 N. W. 347; *Durant* v. *Kauffman*, 34 Iowa 194.

The Iowa court recognizes that the question of whether particular lands within a municipality shall be subject to municipal taxation is, under the standard which it sets up, difficult for judicial determination, that adjudicated cases aid little, that there is no definite rule, that the particulars of each case must govern, and that decisions will sometimes appear arbitrary and unsatisfactory. *Brooks* v. *Polk County*, 52 Iowa 460, 3 N. W. 494.

The Iowa doctrine long prevailed in Kentucky. *Coventry* v. *Southgate*, 15 B. Monroe, 491; *Coventry* v. *Arthur*, 12 Ky. Law Rep. 163, 14 S. W. 121.

However, by the Kentucky constitution of 1890, the people of that state ordained, in respect to taxation, that it should be ''uniform upon all property subject to taxation within the territorial limits of the authority levying the tax''; and since that constitution went into effect, agricultural lands within the limits of a municipality have been subject to municipal taxation without reference to actual benefit or protection. 2 Thorpe's American Charters &c., 1342; *Board of Councilmen* v. *Scott*, 101 Ky. 615, 42 S. W. 104; *Moore* v. *City of Harrodsburgh*, 32 Ky. Law Rep. 384, 105 S. W. 925.

The new constitution was made the occasion for a change in the doctrine of the Kentucky court; yet that court, since the change, has said: ''If the old rule was ever supported by a good reason there would be the same reason for its application under the new as there was under the old constitution. But the old rule was never satisfactory because impracticable. It seemed, in principle, to suggest a comparative basis for the taxation of property within a city, levying the greater tax on those more favorably located, and graduating the taxes of each

tax-payer according to the benefits received. There was constant friction under the old system, and the courts were rarely without cases involving the question of taxation of outlying property. There are many reasons why such cases were rapidly multiplying, rather than diminishing, under the old rule. When, therefore, the provisions of the new constitution seemed to demand absolute uniformity of taxation within the territorial limits of the taxing authority, the court seized the opportunity of changing the rule." *Hughes* v. *Carl,* 106 Ky. 533, 50 S. W. 825.

At one time the Nebraska court took the Iowa view. *Bradshaw* v. *City of Omaha,* 1 Neb. 16. But that court has changed its view and overruled the Bradshaw case. *Turner* v. *Althaus,* 6 Neb. 54. See also *Lancester* v. *Bush,* 35 Neb. 119, 52 N. W. 837, and *Kountz* v. *Omaha,* 5 Dill. 443.

Dillon, in his work on municipal corporations, reviews the Iowa rule and concludes that the difficulties in the way of its application are "almost unsurmountable." 2 Dill. Mun. Corp. §795.

Judge Cooley in his work on taxation, p. 157, considers the matter very fully and carefully and concludes that the doctrine underlying the Iowa cases and the earlier Kentucky cases is fundamentally unsound. In New Jersey the owner of farm lands situated within a borough sought to secure the exemption of such lands from taxation for village purposes on the ground of a total lack of benefit to him or his land from the existence of the borough and the expenditure of its revenues. In considering the claim the Supreme Court of New Jersey refer to the decisions in Iowa, Kentucky and Nebraska and say: "The courts in these cases, by an injunction or other process, have stepped in, and arrested the proceedings to collect, on the ground that it was taking private property for public purposes, without compensation, that it was confiscation and not taxation. Except in the courts of the states mentioned the doctrine thus promulgated has no support in the jurisprudence of this country. * * * The power of the Legislature to authorize the levying of taxes, for any public purpose, upon all the property within the municipality is indeed denied in those cases, but nowhere else. The ground upon which the courts went was that no benefit accrued to the party assessed, and that so his land, by reason

of that was non-assessable. They imported into the levy of a general tax the question of benefits to the tax-payer. If he was benefited, he could be assessed, otherwise not. It is perceived that if the matter of benefits to the tax-payer becomes a judicial problem the courts cannot halt at the line of no benefit in dealing with general tax levies. The logical result of a judicial intervention at all carries the boundary of supervision into all degrees of benefit. * * * * Hundreds are assessed in a city for the expense of electric lights who have to content themselves with gas or nothing, for sewers when no sewer runs within a mile of their property, for public parks which are located on the opposite side of the city and are practically unreachable for the purposes of recreation, and for police when such an officer is rarely visible. * * * * There can be no logical distinction between property which the court may think to be inadequately benefited and property which it may deem to be the recipient of no benefit. The supposed wrong to the tax-payer although differing in degree is in each instance identical in kind." *Bailey* v. *Brown,* 53 N. J. L. 162, 20 Atl. 772.

The sound and practical doctrine above enunciated is fully recognized and enforced in Michigan and Pennsylvania. *Mitchell* v. *Negaunee,* 113 Mich. 359, 67 Am. St. Rep. 468, 71 N. W. 646; *Kelley* v. *City of Pittsburgh,* 85 Penn. St. 170, 27 Am. Rep. 633.

In Illinois the owners of farm lands within the corporate limits of a municipality sought to relieve them from municipal taxation for purposes in no way beneficial to such lands or to the owners thereof. It was held that while the lands remained within the corporate limits they could not be so relieved. *Cakry* v. *Pekin,* 88 Ill. 154, 30 Am. Rep. 543.

The same was held in *Town of Dickson* v. *Mayes,* 72 Cal. 166, 13 Pac. 471, and in *Santa Rosa* v. *Coulter,* 58 Cal. 537.

To the like effect is *Hurle* v. *City of Kansas City,* 46 Kan. 738, 27 Pac. 143, where it is said that to relieve from municipal taxation any land within the corporate limits of a city "would breed unwarranted confusion with our assessments and produce endless strife in our taxation."

The like view is taken in West Virginia, Texas, Georgia, Indiana, Maryland, Missouri and the State of Washington. *Davis* v. *Point Pleasant,* 32 W. Va. 289, 9 S. E. 228; *Norris* v.

·*Waco,* 57 Tex. 635; *Frace* v. *Tacoma,* 16 Wash. 69, 47 Pac. 219; *Linton* v. *Athens,* 53 Ga. 588; *Town of Cicero* v. *Saunders,* 62 Ind. 208.

In Mississippi according to the Supreme Court of that state it is quite common "to incorporate under high sounding names every collection of a half dozen houses erected at the intersection of country·cross-roads" and, say the court, the limits of these municipalities frequently embrace an extensive area of land not benefited by sidewalks, lights, water works or other comforts supposed to attend or follow incorporation. But the Supreme Court of that state emphatically denies that it is for the judicial department to inquire as to benefits received, and that for the courts to undertake to do so would be an assumption of power "unsound in theory and dangerous in practice." *Martin* v. *Dicks,* 52 Miss. 53, 24 Am. Rep. 661.

It should be said that the Iowa doctrine is upheld in Utah. *Kaysville City* v. *Ellison,* 18 Utah 163, 55 Pac. 386.

It is thought that Iowa and Utah are the only states that now maintain the doctrine which the orator here invokes.

The authorities cited to show the view which is taken almost universally in this country rest upon sound reasoning as is shown by the quotations made. It is not for the courts to interfere with the policy of the Legislature in respect to the taxation for municipal purposes of property included within municipal limits. In some cases the Legislature itself has prescribed a classification and when it has done so the legislative will is of course to be given effect by the courts.

Whether in determining the boundaries of towns, cities, villages and counties the Legislature may ever so act as to transcend its constitutional powers and to subject to the revision of the courts a policy peculiarly legislative it is not necessary to determine.

A minor question in the case is raised by the allegation of the bill that the village always votes a lump sum and a certain per cent. on the grand list for general village purposes and that this course renders the village tax invalid and compels a resort to equity for relief against it. We do not understand from the bill that the school tax, or any other tax required by law to be specifically assessed is included in the tax voted "for general village purposes." Our attention has been called to no general

law and to no provision of the village charter which requires that at the village meeting one tax should be voted for police protection, another for fire protection, another for the maintenance of the water supply, another for the salaries of the village officials, another for the provision of street lights and so on. Estimates in respect to such matters, based on previous expenditures, existing needs and plans determined upon, furnish a basis for the tax assessment for general village purposes, but it seems to be the function of the trustees of the village out of the general fund to make appropriations for the various departments of the municipal government.

The natural construction of the allegations in the bill is such that it is unnecessary to inquire whether or not an illegal unification of taxes which the law requires to be separately assessed would warrant an injunction against the collection of the tax so assessed. Nor is it necessary to inquire whether the statement of what the village always does in voting taxes is a sufficient allegation on which to base a prayer for relief.

*Decree affirmed and cause remanded.*