CITY OF MUSKEGON *v.* BOYCE.

TAXATION—OMISSION OF PROPERTY FROM ROLL—FRAUD.

The mere fact that some of the property upon an assessment roll was undervalued, or that taxable property was omitted from the roll, is insufficient to invalidate an assessment, but to have that effect it must also be made to appear that such action on the part of the assessing officers was intentional, and that the person complaining is thereby compelled to pay more than his just proportion of taxes. Upon a review of the evidence in this case, *held,* that neither of the latter facts was conclusively shown.

Error to Muskegon; Russell, J. Submitted January 5, 1900. Decided March 27, 1900.

*Assumpsit* by the city of Muskegon against George Boyce to recover a tax on personal property. From a judgment for plaintiff, defendant brings error. Affirmed.

*Bunker & Carpenter*, for appellant.

*C. W. Sessions*, for appellee.

MOORE, J.   The defendant was assessed on the assessment roll of 1898, for personal estate, $15,000.   He did not pay the tax levied on this personal property.   The city sued him for it, and obtained a judgment against him. From that judgment he has brought the case here by appeal.

Mr. Murray was the city assessor.   He was confined to his house with a broken leg part of the time when he ought to have been making his assessment.   He employed Mr. Gray to assist in making the assessment.   Mr. Gray had a talk with defendant, who claimed he had no property liable to assessment.   Mr. Gray and Mr. Murray discussed the propriety of assessing Mr. Boyce, but finally did not do so.   When the board of review met, it assessed Mr. Boyce $15,000 on his personal estate.   He was notified, appeared before the board, and protested against its action, not because he did not have the property, but, to quote his own language:   "I have no personal property to be taxed, except mortgages, and they are not taxed here,—at least, there are none in Muskegon paying taxes on them; and for that reason I beg of you to take my name from the roll."   It is admitted by the defendant he is not assessed too much, but it is claimed that the assessor did not mean to assess any person except defendant for money loaned, or for credits in any other form, and that a small portion of the records of the office of the register of deeds shows there were mortgages owned by residents of the city amounting to more than $100,000.   It is also claimed the assessor discriminated in favor of local manufacturing concerns, assessing 12 of them upon personal property but $149,000, when their reports for the same year show they had more than $1,000,000 in personal property.   It is also claimed the banks had more than $1,000,000 on deposit; that the assessor willfully omitted to place property on the assessment roll that ought to have been assessed, and his failure to do so was a fraud upon defendant, and invalidated the roll,—citing *Walsh* v. *King*, 74 Mich. 350 (41 N. W. 1080); *Solomon* v.

*Township of Oscoda,* 77 Mich. 365 (43 N. W. 990); *Auditor General* v. *Jenkinson,* 90 Mich. 523 (51 N. W. 643); *Auditor General* v. *Prescott,* 94 Mich. 190 (53 N. W. 1058).

The circuit judge charged the jury in detail, telling them fraud would vitiate the roll. Among other things, he charged them:

"As I have already stated, gentlemen, the theory of the law is that each class of property shall bear its just proportion of the burdens. Of course, that is only in theory, because we all know that it would be absolutely impossible, in a city such as this, for an assessing officer to make an assessment that would be in all respects exactly equal. Therefore the law provides that if this assessing officer and the board of review act honestly and use their best judgment, trying to act fairly, so that each piece of property shall bear its just proportion of the public burden, if they make a mistake it is excusable; but the law will not tolerate the fraudulent acts of these parties, and if you find that Mr. Murray, while he was acting as assessor, neglected and refused to assess any class of property, or any property, which he knew existed in this city, that was subject to taxation, whether it be mortgages (that is, credits on mortgages), or whether it be the credits that were deposited in banks, or whether it be any other class of property, if he did not intend to do his duty, and by that means intended to discriminate in favor of one party and against another party, why, this assessment is void, unless that trouble was avoided by the board of review. Or if you find that the board of review in passing upon that assessment roll, of which he was one, acted fraudulently,—intended to discriminate and did discriminate against a certain class of property, or neglected and refused to add property which they knew existed, that should be taxed in the city, to the assessment roll,—why, the plaintiff here cannot recover. If they acted fairly and honestly, using their best judgment,—tried to do their duty,—why, that ends this case. Now, gentlemen, that is really all there is to the case."

The jury found a verdict in favor of the city. It is now said the court ought to have directed a verdict in favor of defendant. Many questions are discussed by counsel to which we do not think it necessary to refer.

Mr. Murray and Mr. Gray, who made the assessments, and both of whom were members of the board of review, were called as witnesses. No other members of the board of review were called. It is insisted that the testimony of these men shows they did not intend to assess mortgages or credits. Answers made by them to one or two questions, standing alone, give color to that assertion; but the testimony, taken as an entirety, shows a different condition. They state explicitly that they did not, through design or intention, leave off from the roll any class of property that was assessable, and that it was their design and intention to assess all the taxable property in the city. They also testified they did not intend to discriminate in favor of any class of property, or for or against any person or persons. The record discloses that the board of review added many new names to the assessment roll after it came to them, and increased the amount of the assessments about $240,000. There were upwards of 530 assessments of personal property. More than 160 assessments were made against owners of shares of bank stock. It appears from the record that nearly all of the 12 manufacturing concerns before mentioned appeared before the board of review, and protested against their assessments because they were too high. As to one of these concerns, which counsel say had personal assets, as shown by its annual statement, of upwards of a quarter of a million of dollars, it was made to appear that the assets consisted almost wholly of a patent right upon a fluid to extinguish fires, which was of little value. In another concern, a considerable portion of the assets consisted of patterns for machinery that were out of date. In other cases it was claimed that large portions of the assets were shown to be in other States, subject to assessment there. In reference to the mortgages, it was not shown what proportion of them were unpaid. It does not appear in the record who the mortgagees were, except in two instances, and those were mortgages owned by defendant. Nor is it shown that such of them as ought to be assessed were not included

in the assessments made against personal estate which did appear on the roll. Defendant called as witnesses the cashiers of various banks, who testified to the number of depositors and the extent of the deposits. There were upwards of 4,000 of the depositors, some of whom lived outside of the city. Some of these deposits were due to the county, some to the schools. A large part of them were due to commercial and manufacturing concerns against whom a personal-estate assessment was made. Many of them were represented by certificates of deposit which were negotiable, and passed from person to person by indorsement. It is not shown who the individuals were who made these deposits, except that it is shown that, in the spring of 1898, certificates of deposit were issued by one of the banks to the defendant, amounting to fifteen or eighteen thousand dollars, which certificates were transferred by him before they were presented for payment. It is not shown that the assessor or the board of review had any knowledge of bank deposits which ought to have been assessed which were not assessed. The record discloses that there were about 7,000 pieces of property, valued at between four and five millions of dollars, upon the assessment roll. It does not disclose any specific property which ought to have appeared upon the roll that was designedly left off by the board of review. The only members of the board of review who were called as witnesses testified that, during the entire session of the board, there was no statement or intimation by any member of the board of an intention to discriminate against one taxpayer and favor another.

"There was no design expressed on the part of the board of review, or any member thereof, to discriminate against any person in the assessment of property in this city. There was nothing done on the board of review, there was nothing said by any member of that board, that led me to believe or think that there was any intention to discriminate against George Boyce."

It is quite possible that the value placed on the property by the assessing officers was low. It is also probable that

property which ought to have found its way to the assessment roll was not assessed. But that of itself is not· sufficient to allow a taxpayer to escape from taxation. It must be made to appear that because of these things he is made to pay more than his proportion of taxes. *Peninsula Iron & Lumber Co.* v. *Township of Crystal Falls*, 60 Mich. 510 (27 N. W. 666); *Williams* v. *Mears*, 61 Mich. 86 (27 N. W. 863). It is not at all clear that defendant ought not to have been assessed more than he was, or that he was not assessed as low proportionately as any one else. The testimony tends to show that he was reputed to be worth from $150,000 to $200,000. His real estate assessed was but $3,760. He made a protest upon the board of review in relation to his real-estate assessment, claiming it should be reduced to $2,500. It is somewhat significant that he was not called as a witness. It is not made to appear that, by reason of the assessment, he is made to pay more than his proportion of taxes. Giving the testimony the most favorable construction possible in favor of defendant, it, at most, only raised a question to be submitted to the jury. This was done by the trial judge, and the jury found against the contention of the defendant. The case is very different from those cited by defendant. In two of the cases a very large proportion of the property was, by agreement of the officers, left off the assessment roll. In two of them the property was assessed at only a tenth of its value, and this was done designedly. The case is also unlike the case of *Auditor General* v. *Pioneer Iron Co.*, *ante*, 521 (82 N. W. 260). In the last case it was made to appear that not only the assessing officer, but the board of review as well, designedly discriminated against certain of the property owners, and in favor of others, and that large values of property were by design left off the roll. The circuit judge, acting as chancellor, in passing upon the testimony found these facts. In the case before us the jury found that such facts did not exist. A court would not be warranted in holding a tax assessment to be invalid because the assess-

ing officer or the board of review had acted fraudulently, unless that fact was clearly established by the evidence. *Perkins* v. *Nugent*, 45 Mich. 156 (7 N. W. 757); *Drennan* v. *Beierlein*, 49 Mich. 272 (13 N. W. 587); *Pioneer Iron Co.* v. *City of Negaunee*, 116 Mich. 430 (74 N. W. 700).

The judgment is affirmed.

The other Justices concurred.