SWEEZY *v.* FISHER.

1. HUSBAND AND WIFE—TORTS OF WIFE—LIABILITY OF HUSBAND
   —EVIDENCE.

   In an action against a husband and wife for the wife's 'tort,
   evidence examined, and *held,* insufficient to show that the
   husband participated in his wife's act, and was therefore lia-
   ble because of the marital relation, or because he did not
   prevent her by force from committing the wrong.

2. TRIAL—MISCONDUCT OF COUNSEL.

   Where, in an action for injuries to plaintiff because of holes
   tortiously dug in a highway by defendant's wife, there was
   no evidence that defendant participated in or knew of the
   tort until some two weeks after it was committed, it was im-
   proper for plaintiff's counsel to argue to the jury that defend-
   ant might have gone up to the road in the dead of the night
   and dug the hole, and then had his wife go there the next day
   and stay for a short period of time, etc., and charged the
   digging to her.

   HOOKER, J., dissenting.

Error to Wexford; Chittenden, J. Submitted July 21,
1905. (Docket No. 94.) Decided December 15, 1905.

Trespass vi et armis by Napoleon B. Sweezy against
Albert Fisher and Minnie Fisher. There was judgment
for plaintiff, and defendant Albert Fisher brings error.
Reversed.

*Gaffney & Pease,* for appellant.

*I. C. Wheeler,* for appellee.

HOOKER, J. The plaintiff was injured, as was his
horse, also, through the stepping of the latter into a hole
in a logging road over which plaintiff was traveling. It
is admitted that this and other holes were made in the
highway by the wife and codefendant of Albert Fisher,
the appellant. The case was begun in justice's court.
Upon the trial at circuit the learned circuit judge per-

mitted the jury to find a verdict against both defendants.
Judgment followed, and Albert Fisher appealed.

The important question in the case is whether there was
sufficient, if any, evidence justifying the conclusion that
Albert Fisher participated in the tort alleged, and whether
the court should not, as requested, have directed a verdict
in his favor. The testimony of one Chris Bosack, sworn
for the plaintiff, was that Mrs. Fisher told him the day
before that, " To-morrow morning I dig hole that your
team will break up in"—to kill him (Bosack) and his team.
Bosack and Fisher were in a quarrel over the roads.
This was all the testimony given by the plaintiff, and did
not indicate that Fisher was in any way connected with
the act of his wife. A motion for a nonsuit made at this
juncture was denied, whereupon Fisher was sworn in his
own behalf. He stated that Bosack blocked up a road
over which Fisher was hauling logs, and took a job away
from him, or, as he stated it, "robbed me out of a job."
He was afterwards convicted of stealing potatoes from
Bosack, and was put in prison for some offense in connec-
tion with their troubles.

Referring to the digging of the holes, the following is
his testimony :

"*Q.* How did you know that those holes were dug, Mr.
Fisher ?

" *A.* Well, I didn't know particular.

" *Q.* Well, did you know in the morning when your
wife went out to dig those holes ?

" *A.* All I know is she asked for a spade, a tool; that
is all I know about it.

" *Q.* And did you get them for her ?

" *A.* No, sir; I didn't even know where they were.

" *Q.* What did you think she was going to do with the
spade and tools ?

" *A.* I didn't know anything about it.

" *Q.* What did she say she was going to do ?

" *A.* Well, she said she was going to see if she couldn't
block that line fence, and, if she made a snowdrift, she
wanted to see if she could shovel it out—get through the
snowdrift.

" *Q.* How long was she gone ?

"*A.* Well, I should think she was gone about 20 minutes I didn't look at the watch.

" *Q.* What did she say when she came back?

" *A.* She didn't say anything to me.

" *Q.* Didn't she say she was going up to dig a hole for Mr. Bosack to get into?

" *A.* No; she didn't that time.

" *Q.* What time did she say that?

" *A.* I don't know anything about it when she said it. She said something about holes at the time they got the warrant out for her.

" *Q.* You didn't know anything about it till they came with the warrant?

" *A.* Yes, sir.

" *Q.* How long was that after she went up there with the tools?

"*A.* It was about two weeks.

" *Q.* And didn't you know that Sweezy had gotten into the hole before that time?

"*A.* I didn't know anything about it. All I knew was what I heard. I didn't know whether he went into the hole or not?

" *Q.* And it was about two weeks after they came with the warrant for her?

" *A.* Well, I think it was about that.

" *Q.* How do you know, then, that it was two weeks, if you do not know when it was done.

" *A.* According to the way they said, from the 31st till the 16th or 17th, but I remember well when she asked for the spade, and it wasn't the 31st of December, it was the 6th day of January?

" *Q.* How do you know that it was the 6th day of January?

"*A.* I know it very particularly because it was the second day after the Farmers' Institute.

" *Q.* Didn't she ask for a spade on the 31st day of December?

" *A.* No, sir; not that I remember of.

" *Q.* Then you didn't know about anything being done on the 31st?

" *A.* No, sir. The way I know particular the way it was, I went over onto the other place the first day of the Farmers' Institute was, and I was going to cut some tracks and Mr. Bumps was going to help me, and I took the pails in my hand and was going to milk two cows then she asked me for a spade and a shovel.

" *By Mr. Gaffney:* You say your wife asked you for a spade one morning?

" *A.* Yes, sir.

" *Q.* And she told you at that time she was going to block the road over there ?

" *A.* Yes, sir.

" *Q.* What did you tell her ?

" *A.* Well, I told her she better not block the road, because, I said : 'It won't do us any good so long as we don't own the premises.'

" *Q.* Well, what did you do then after you told her that ?

" *A.* Well, I went and milked the cows. I had the pail there and I milked the two cows.

" *Q.* How long were you gone ?

" *A.* Oh, about 20 minutes because I milked those two cows and strained the milk, and when I got the milk strained she was then just in front of the gate.

" *Q.* Did she tell you where she had been ?

" *A.* No, sir; not in particular at that time.

" *Q.* How long afterwards did you learn that she had been over there attempting to block the road ?

" *A.* Well, it was about the time they got the warrant out. Of course, I heard that she had made some disturbance there.

" *Q.* But you did get her the spade, when she asked for it ?

" *A.* I did not. I told her I didn't know where it was. It must be somewhere in the barn. I said, ' The young ones, they know where the tools are,. and they have them and destroy them.' That is all I know about it.

" *Q.* Were you willing that she should' be down there and interfere with the road ?

" *A.* No, sir; I was not. I told her that she better come back, and not do that. That was just before she went out of the gate.

" *Mr. Gaffney:* That is all.

" *By Mr. Wheeler:* Did you go with her to see what she would do ?

" *A.* No, sir.

" *Q.* You did not try to prevent her from doing anything did you ?

" *A.* Yes; I told her she better come back.

" *Mr. Wheeler:* That is all.

" *Mr. Gaffney:* That is all.   The defense rests."

From the testimony the jury must have inferred his participation. While he denied knowing her intention, it appears from his own testimony that she asked him for the spade, and he told her that it was in the barn somewhere, and that the children would know. If he did not know of her intention, why did he tell her she better not block the road, or not take enough interest to ascertain what she was going to do. His supposition that she was going to block the road by shoveling snow and making a snowdrift was not very probable. From the whole testimony, viewed in the light of the relations of the parties, we cannot say that the jury were not justified in inferring appellant's participation in or encouragement of the act of his wife. In his closing argument counsel for the plaintiff said:

"Brother Gaffney claims that Mrs. Fisher was gone only about 20 minutes from her house at the time these holes were dug and that she did not have time to go and return and dig these holes, as described by plaintiff's witnesses, and place other obstructions in the road. Who knows but Mr. Fisher went up there in the dead of the night and dug that hole, then had his wife go up there for 20 minutes."

In view of the weather, and the amount of labor required, an inquiry of that kind may not have been out of place.

The judgment should be affirmed.

MCALVAY, J. From an examination of all the testimony in this case upon which appellant is held guilty of the tort committed by his wife, I cannot agree with the conclusion of Justice HOOKER. There was no evidence at all given by plaintiff to connect this defendant in any manner with the transaction. Had defendant not proceeded with his defense and been sworn as a witness in his own behalf, there is no question whatever but that the case should have been dismissed as to him upon his motion made. If the situation is at all changed, it is because of evidence he has given. All of this testimony is set forth

in the opinion affirming the judgment against him, and from the record it appears that it was brought out upon his cross-examination.

A careful reading of his testimony shows that he is held guilty of the tort complained of because he knew that his wife got a spade to block the road with snow. He did not get the spade for her. He said that it was in the barn somewhere; that the children knew where; but he did not know. He told his wife she would better not block the road; also told her to come back after she had started. He said he did not know what she actually did until two weeks after. From this evidence a jury is allowed to infer that he participated in or encouraged the commission of the wrong by his wife. This evidence, in my judgment, will not warrant such an inference. There is no evidence at all that he participated in the act, and his testimony is that he told his wife not to go, and to come back. He cannot be held guilty because of the marital relation, nor because he did not by force prevent her going. The motion to dismiss the case as to appellant at the close of the proofs for want of evidence should have been granted. The court erred in denying it.

Remarks of plaintiff's counsel in closing the case were excepted to. These remarks were clearly prejudicial to this defendant. The jury were allowed to suppose or guess that appellant went out in the night-time and dug the hole in the road. It is not claimed that there was any evidence in the case supporting such a theory. The trial judge should have cautioned counsel and instructed the jury to pay no attention to the statement. It was error not to do so.

The judgment must be reversed and a new trial ordered.

MOORE, C. J., and GRANT, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred with McALVAY, J.