GADDE *v.* MICHIGAN CONSOLIDATED GAS COMPANY.

1. NEGLIGENCE—CIRCUMSTANTIAL EVIDENCE.

Negligence must be affirmatively proved; but, like other facts, it may be shown by inference from circumstances.

2. SAME—EVIDENCE—PRIMA FACIE CASE.

The happening of an accident alone is not evidence of negligence, but negligence may be established by circumstantial evidence; and where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inferences from established facts, at least a prima facie case is made.

3. GAS—DEGREE OF CARE REQUIRED—NEGLIGENCE.

A gas company deals with a substance of a *highly dangerous* nature, and is bound to use a degree of care commensurate with danger of its gas escaping and causing injury or damage to person or property of others.

4. NEGLIGENCE—RES IPSA LOQUITUR.

The doctrine of *res ipsa loquitur* is an uncertain blend of more fundamental concepts of law and generally involves some or

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur, Negligence § 333.
[2] 38 Am Jur, Negligence §§ 289, 290.
[3] 24 Am Jur, Gas Companies § 24.
[4] 38 Am Jur, Negligence § 295 *et seq.*
[5] 38 Am Jur, Negligence § 285 *et seq.*
[6] 24 Am Jur, Gas Companies § 32.
  Liability of gas company for injury or damage due to defects in service lines on consumer's premises. 26 ALR2d 136.
  Liability of one repairing, installing, or servicing gas-burning appliance, for personal injury, death, or property damage. 72 ALR 2d 865.
  Gas company's liability for injury or damage by escaping gas. 138 ALR 870.
[7] 58 Am Jur, Witnesses § 862.
  Comment Note: Credibility of witness giving uncontradicted testimony as matter for court or jury. 62 ALR2d 1191.
[8] 58 Am Jur, Witnesses § 867.

all of the conditions (1) that the event must be of a kind which ordinarily does not occur in the absence of someone's negligence, (2) the event must have been caused by an agency or instrumentality within the exclusive control of the defendant, (3) that the event must not have been due to any voluntary action or contribution by plaintiff, or (4) evidence of the true explanation of the event must be more readily accessible to defendant than to plaintiff.

5. SAME—EVIDENCE.

The problems presented by a given negligence case should be resolved by the application of the general law of negligence and evidence evolved from decisions of the Supreme Court, not by the refinement and compartmentalization of the traditional concepts of the law of negligence and of evidence or by dispute over a rule or doctrine.

6. GAS—EXPLOSION—EVIDENCE OF NEGLIGENCE.

Evidence presented in action against defendant gas company *held*, sufficient to lead to a finding of negligence, where it appears defendant's serviceman had been called to do some work on a stove plaintiffs had used for 18 years, had done some work on it, only plaintiff wife used the stove thereafter and did nothing unusual with it, and gas exploded a few hours later when she opened the oven door, there being sufficient evidence to permit reasonable men to conclude the serviceman had caused or was responsible for the explosion.

7. SAME—NEGLIGENCE—CREDIBILITY OF WITNESSES.

The questions of fact to be answered and the assessments to be made in actions arising from explosion of gas at plaintiff's home *held*, to present question of negligence for consideration by jury, especially where there is involved the credibility of witnesses, so much communication in the trial of the case being nonverbal.

8. WITNESSES—CROSS-EXAMINATION OF OPPOSITE PARTY.

A jury is not bound to believe the testimony of a witness who is the agent of the opposite party and is called for cross-examination under the statute (CLS 1961, § 600.2161).

Appeal from Wayne; Gilmore (Horace W.), J. Submitted January 5, 1965. (Calendar Nos. 9, 10, Docket Nos. 50,398, 50,399.) Decided February 8, 1966.

Case by Viola Gadde against Michigan Consolidated Gas Company, a Michigan corporation, for personal injuries sustained in gas explosion. Derivative suit by Elmer A. Gadde and Camden Fire Insurance Association, a New Jersey corporation. Actions consolidated for trial and on appeal. Directed verdicts and judgments for defendant. Plaintiffs appeal. Reversed and remanded for new trial.

*Stanley H. Maples,* for plaintiffs.

*Dyer, Meek, Ruegsegger & Bullard (A. D. Ruegsegger,* of counsel), for defendants.

ADAMS, J. These consolidated cases seek damages for personal injuries and expenses arising out of the explosion of a gas stove. Plaintiffs are Mrs. Gadde, who received the injuries, her husband, suing for expenses and loss of consortium, and their insurance company which indemnified the property damage.

On the morning of January 26, 1959, Albert Getsoian, a serviceman for defendant who held the lowest of four ratings, called at the Gaddes' home. Mrs. Gadde wanted the oven flame of her stove increased so that it would broil steaks. The stove was 18 years old, had been in constant use, and had never had a leak.

Getsoian started to work. Mrs. Gadde watched him momentarily before leaving the kitchen. To the extent that she did observe his actions, there is a dispute as to whether he went into the stove's gas line. She testified:

"And he started working on the oven, and I said to him, 'Is it necessary for you to go into the gas line?' and he said, 'Yes'. * * * I said, 'I don't

like that, but I guess you know what you are doing, go ahead and do it.' "

Getsoian regarded any gas leak as a "dangerous situation." He tested Mrs. Gadde's oven for a leak. He did this by his sense of smell, although he admitted that a mechanical detector he had with him would have been more sensitive. He found no leak. When he was through, he showed Mrs. Gadde the flame and she was satisfied with it.

From this point, until the explosion, Mrs. Gadde was the only person to touch the stove. Half an hour after Getsoian left, she used the oven to broil a steak. Mrs. Gadde noticed that the oven not only "grabbed" or "poofed" when she attempted to light it, but that she was unable to cut the flame back or control it with the central control dial as she had previously been able to do.

About 4:30 p.m., Mrs. Gadde lit the front burners to heat some food for the evening meal. She opened the oven door to light the oven. Before she could strike a match, a big flash of flame came from the oven. Mrs. Gadde suffered serious injuries.

Bassett, defendant's serviceman of 35 years' experience, called at the Gadde home the following morning. According to Mrs. Gadde, Bassett placed a gas detector in the oven and instantly discovered a substantial leak. Bassett testified he ran several tests before he discovered there was sometimes a leak. This happened when the central control dial did not seat properly in the off-position because it was binding on the panel. He did find a "substantial" leak. He determined the stove was not damaged by the explosion, advised Mrs. Gadde not to use it, and made the oven inoperative.

The above events constituted plaintiffs' cases. Defendant moved for directed verdicts. The trial judge held that *Mitcham* v. *City of Detroit,* 355 Mich

182, 190, established a Michigan doctrine of *res ipsa loquitur* and that a condition to the operation of the doctrine is exclusive control of the instrumentality by the defendant. Because this condition was not met, he granted the motions. In doing so, he erred.

I.

In 1863, in a case in which a barrel of flour rolled out of a warehouse window and fell upon a pedestrian, Baron Pollock uttered the Latin phrase *res ipsa loquitur*. *Byrne* v. *Boadle,* 2 H & C 722, 725 (159 Eng Rep 299, 300); Prosser, Torts (3d ed), § 39, p 217. This is generally considered to be the beginning of that doctrine. Prosser, The Procedural Effect of Res Ipsa Loquitur, 20 Minn L Rev 241.

In 1884, in the case of *Alpern* v. *Churchill,* 53 Mich 607, 613, Justice COOLEY observed:

"Negligence, like any other fact, may be inferred from the circumstances; and the case may be such that, though there be no positive proof that defendant has been guilty of any neglect of duty, the inference of negligence would be irresistible."

In 1919, *res ipsa loquitur* had made such progress as to cause Justice FELLOWS to observe:

"This Court has not adopted the rule *res ipsa loquitur;* we have uniformly held that the happening of the accident alone is not evidence of negligence; and we have as uniformly held that negligence may be established by circumstantial evidence, and that where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inferences from established facts that at least a *prima facie* case is made." *Burg-*

*hardt* v. *Detroit United Railway,* 206 Mich 545, 546, 547 (5 ALR 1333).

Justice Fellows employed "the rule *res ipsa loquitur*" to mean the happening of an accident alone could be sufficient evidence of negligence to make a case for a jury, a proposition he and the Court were unwilling to accept. Yet he referred with approval to *Barnowsky* v. *Helson* (1891), 89 Mich 523, 524, and 526, 527 (15 ALR 33), quoting this passage from the earlier case:

" '*In this case the falling of the roof was in and of itself some evidence* that the work of raising it was not being done with the ordinary care and skill. It is true that the mere fact of any injury does not impute negligence on the part of any one, but where a thing happens which would not ordinarily have occurred if due care had been used, the fact of such happening raises a presumption of negligence in some one.     *     *     *

" 'This roof not properly supported would fall as a natural result of the laws of gravitation, but if properly braced there would be no reason for its falling from that cause, and it would not fall from any other cause without the interposition of the elements or some human agency. Therefore, without any other showing than that it suddenly gave way, slipped or tipped to one side, and fell, the presumption is almost conclusive that it fell because it was not sufficiently braced or stayed.' " *Burghardt* v. *Detroit United Railway, supra,* 547 (emphasis supplied).

So, as early as 1891, the dangerous potentiality of the force of gravity, whether in relation to barrels or roofs, had come to the attention of the Michigan Court even to the extent of an "almost conclusive" presumption. The dangerous nature of gas was later in coming to the Court's attention. In *Fleegar* v. *Consumers Power Co.* (1933), 262

Mich 537, 544,[1] the Michigan Court first[2] recognized the high standard required of those dealing with the substance.

Justice VOELKER in *Mitcham* v. *City of Detroit, supra,* 188, upon review of Michigan cases, was moved to say:

"Ironically enough, the Michigan version of the doctrine of *res ipsa loquitur* in some respects plainly 'out ipsas *res ipsa,*' as it were; and thus we find that in some of our cases we speak boldly of a 'presumption of negligence' (see *Barnowsky* v. *Helson,* 89 Mich 523, 525 [15 LRA 33] where we said 'the fact of such happening [the falling of a roof] raises a presumption of negligence in some one') whereas many out-and-out *'res ipsa'* jurisdictions speak more softly (as we ourselves usually do) only of an 'inference of negligence.'"

In *Mitcham,* Justice VOELKER did not define a Michigan doctrine of *res ipsa loquitur.* Rather, as has been done numerous times, he analyzed a fact situation to determine whether it was sufficient to allow plaintiff to go to the jury.

Whether Michigan has or has not a doctrine of *res ipsa loquitur,* in spite of many attempts to

---

[1] In *Fleegar* plaintiff sued for defendant's negligence in making gas connections to plaintiff's house. The negligence alleged was in sending an unskilled and incompetent workman to make and maintain the connection.

The plaintiff had called the defendant's workman under the statute (at that time, CL 1929, § 14220 [CL 1948, § 617.66 (Stat Ann § 27.915)]). This Court held that under this statute the plaintiff was not bound by the answers of the workman, but that the workman was a witness for the plaintiff, not for the defendant, and that the workman's testimony must be considered just as that of any other witness. This Court held that although the plaintiff was at liberty to contradict the testimony, failing to do so, plaintiff was bound by it. This aspect of *Fleegar* is not now Michigan law. See *Petrosky* v. *Dziurman,* 367 Mich 539, 548, and discussion *infra.*

[2] An earlier case of *Pettersch* v. *Gas Light Co.,* 245 Mich 277, 279 (28 NCCA 44), dealt with a gas explosion, but spoke only of "the exercise of reasonable care and diligence."

clarify the situation, continues to perplex the legal profession. The use of the rule elsewhere has been such as to move Prosser to say:

"The Latin catchword is an obstacle to all clear thinking. It is the illegitimate offspring of a chance remark of an English judge 86 years ago, hybridized with the carrier's burden of proof. There is no case in which it has been anything but a hindrance." Prosser, *Res Ipsa Loquitur* in California, 37 Cal L Rev 183, 234.

The doctrine of *res ipsa loquitur* is generally held to involve some or all of the following conditions:

1. *The event must be of a kind which ordinarily does not occur in the absence of someone's negligence.*

2. *The event must have been caused by an agency or instrumentality within the exclusive control of the defendant.*

3. *The event must not have been due to any voluntary action or contribution on the part of the plaintiff.*

4. *Evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff.*

The meaning of each condition, its applicability to a given case, and whether the condition is an appropriate part of the doctrine, has led to endless dispute. In the present cases, defense counsel argue vigorously that the second condition has not been satisfied, but plaintiffs' counsel counter that in cases involving bottled beverages, as well as in other situations, there is an exception as to this requirement.

Suffice it to say that under some circumstances the fact of exclusive control by the defendant may lead to an inference of negligence, but negligence may exist on the part of a defendant without ex-

clusive control depending upon the total circumstances of a given case.[3]

Formal adoption of the doctrine of *res ipsa loquitur,* whomsoever's version might be chosen, would add little to the jurisprudence of this State or to the attainment of justice. This is not to in any way overrule our past decisions or to say that in some cases, even possibly this one, the facts will not permit nice, neat, classification under this or that version of the doctrine. Whether they do is not the consequential issue. The doctrine is merely an uncertain blend of more fundamental concepts of law. Our concern is with the proper application of such concepts from the larger fields of negligence and evidence.

Recently Justice SOURIS had occasion, in reviewing the doctrine of assumption of risk, to vie against unnecessary compartmentalization of the law. *Felgner* v. *Anderson,* 375 Mich 23. He concluded that the traditional concepts of contributory negligence and duty of care sufficiently embrace the doctrine of assumption of risk, making retention of that doctrine redundant. *Felgner* v. *Anderson, supra,* p 56.

So here, the traditional concepts of the law of negligence and of evidence need not be refined and compartmentalized. If the decisions of this Court are applied, not in terms of dispute over a rule or doctrine but under the general law of negligence and evidence, the problems presented by a given case will be resolved.

---

[3] See 2 Harper and James, Torts, § 19.7, pp 1085, 1086. This consideration has led Harper and James to conclude that the condition of exclusive control would be more accurately phrased as follows: "the evidence must afford a rational basis for concluding that the cause of the event was probably 'such that the defendant would be responsible for any negligence connected with it' ", citing Prosser, *Res Ipsa Loquitur* in California, *supra,* p 201.

Did defendant owe a duty to plaintiffs? Was there a breach of that duty by defendant which was the proximate cause of injury to plaintiffs? These are questions of substantive law which concern us. As to proof of plaintiffs' cases, the law of evidence, especially of circumstantial evidence and what may be presumed or inferred from a proper foundation of facts, will suffice.

As we have seen, gas has long been regarded as a dangerous substance. Anyone dealing with this commodity, because of its dangerous propensities, must exercise such care for the safety of others as a reasonably prudent man would exercise in the face of such potential danger. *Young* v. *Lee,* 310 Mich 42, 47. Also, see the cases collected, Annotation, Liability of gas company for injury or damage by escaping gas, 25 ALR 262, supplemented in 29 ALR 1250, 47 ALR 488, 90 ALR 1082, and 138 ALR 870.

The circumstantial evidence and possible inferences might lead to a finding of negligence. Defendant's employee worked on the stove. No one used or touched the stove afterwards except Mrs. Gadde. She did nothing she had not done many times in the 18 years she owned the stove. The gas exploded when she opened the oven door. The fact that the explosion occurred a matter of hours after the serviceman left would be consistent with a theory that it took that long for enough gas to accumulate to cause an explosion. There may have been negligence by Getsoian either in causing a leak or in failing to discover a leak which a trained serviceman should have discovered while working on the stove. When the stove was examined the next day, Bassett found that the oven had a substantial gas leak that had not been created by the explosion. The above facts and Getsoian's prox-

imity to the occurrence are sufficient circumstances from which reasonable men might conclude that he caused or was responsible for the explosion.

It must always be borne in mind that, in the trial of a case, much is told to the jury that can never be transmitted by written record. "Of all the important communications between human beings, at least 50% is nonverbal."[4] In that 50%, in this case, must be included those assessments by the jury which could be vital to its verdict. What kind of a person was Mrs. Gadde—truthful, a maligner, fair, honest, deceitful, stupid? The jury would make that determination not only by what she *said* but by what it found her *to be*.[5] So also as to Getsoian, the fourth-class serviceman. Was he an incompetent, trusting to his sense of smell when he should have used the device he had at hand to check for gas? Did he check the control handle, as part of his testimony would indicate, or did he not? The questions to be answered and the assessments to be made could be expanded. Enough has been said to indicate the wide range of fact determinations for the jury.

Defendant's contention that plaintiffs' circumstantial cases were lost because they took the testimony of the servicemen under cross-examination[6] is without merit. If the jurors believed the testi-

[4] Dr. Andrew S. Watson, Associate Professor of Psychiatry, University of Michigan (1964 Judicial Conference, August, 1964, Mackinac Island, Michigan). See, also, papers by Ray L. Birdwhistell, Ph.D.: "Communication as a Multi-Channel System", International Encyclopedia of the Social Sciences, December, 1964; "Body Behavior and Communication", International Encyclopedia of the Social Sciences, December, 1964; "Communication Without Words", prepared for l'Aventure Humaine, August, 1964.

[5] Ralph Waldo Emerson stated the proposition another way in his *Letters and Social Aims*, 1876, "Do not say things. What you are stands over you the while, and thunders so that I cannot hear what you say to the contrary."

[6] See CLS 1961, § 600.2161 (Stat Ann 1962 Rev § 27A.2161).—REPORTER.

mony of the servicemen, their verdict should have been for defendant. They were not bound to do so. *Petrosky* v. *Dziurman, supra,* 548, 549.

Reversed and remanded for a new trial. Costs to appellants.

T. M. KAVANAGH, C. J., and DETHMERS, BLACK, SOURIS, SMITH, and O'HARA, JJ., concurred with ADAMS, J.

KELLY, J., concurred in result.