.KUJAWSKI v. BOYNE MOUNTAIN LODGE, INC.

1. TRIAL—ARGUMENT TO JURY—EVIDENCE.
    An attorney may not represent as fact in closing argument to the jury any information which is not supported by evidence introduced at trial.

2. SAME—EVIDENCE—ARGUMENT TO JURY.
    Counsel in arguing may not seek to influence the jurors by reference to matters in the nature of evidence not in proof before them, and the trial judge should promptly repress the attempt as something reprehensible.

3. DEATH—ARGUMENT TO JURY—INCOME OF DECEDENT—EVIDENCE.
    . . · Refusal of trial court to sustain defendant's objection to reference by plaintiff's attorney in argument to jury to amount of income of decedent which was not supported by evidence introduced at trial in action to recover damages for wrongful death *held*, reversible error, even though the judge may have been acting in good faith (CL 1948, § 691.581 *et seq.*).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 53 Am Jur, Trial § 480.
[3] 5 Am Jur 2d, Appeal and Error §§ 624–627.

Appeal from Charlevoix; Brown (Charles L.), J. Submitted Division 3 February 8, 1966, at Grand Rapids. (Docket No. 441.) Decided May 24, 1966. Leave to appeal granted by Supreme Court July 21, 1966. See 378 Mich 725, 379 Mich 381.

Declaration by Edward Kujawski, administrator of the estate of John S. Kujawski, Sr., against Boyne Mountain Lodge, Inc., a Michigan corporation, for the wrongful death of decedent allegedly sustained in a fall on defendant's stairway. Verdict and judgment for plaintiff. Defendant appeals. Reversed and remanded for new trial.

*Norman D. Ance* and *Charles H. Menmuir,* for plaintiff.

*Benjamin V. Halstead, Martin B. Breighner,* and *Guy C. Conkle,* for defendant.

McGREGOR, J. This action was brought by the administrator of the estate of John S. Kujawski, Sr., to recover damages for his allegedly wrongful death.[*] On January 22, 1956, the decedent was visiting the Boyne Mountain Lodge, in Charlevoix county, where his son, John, Jr., was employed as a bartender. While the decedent was in a second-floor barroom, known as the Snowflake Room, he asked for directions to the toilet and the head bartender, Mr. Williams, directed him to the toilet on the floor below. He left the lounge and walked down the hallway to the stairway, out of sight of the occupants of the Snowflake Room. As the deceased approached the top of the stairway, Patrick McPhee, whom the decedent knew, was ascending the stairs. When McPhee was about halfway up the stairs, the decedent called to him, "What the hell are you doing here,

---

[*] See CL 1948, § 691.581 *et seq.* (Stat Ann 1959 Cum Supp § 27.711 *et seq.*)—REPORTER.

Pat?", and McPhee replied, "Well, John, I am just playing around, getting in the time." McPhee, who was the only one to see the decedent fall down the stairs, testified that as he passed the decedent, who was still standing at the top of the stairway, at a slight angle with his back partially toward the stairway, the decedent suddenly threw up his arms, let out a gasp, fell backwards down the stairway in one motion, and struck the concrete floor at the foot of the stairway. The following day the decedent died from the severe skull fractures he received in this fall.

The plaintiff administrator alleged in his declaration that the defendant corporation was negligent in the maintenance of this stairway, because at the time the decedent fell there was no handrail on the stairway, the stairway was wet, the lights at the head and the foot of the stairway were out, and the pitch of the stairway was too steep to be considered reasonably safe. Testimony at trial showed that the stairway was 52 inches wide, with 18 steps, risers 8 inches high, and treads 10 inches deep, with a 1 to 1-1/2 inch overhang on each tread. There was a rubber tread cover in the middle of each step. The plaintiff produced witnesses who testified that the lights at the foot of the stairs and in the hallway near the top of the stairway were burned out at the time of the fall. McPhee testified, however, that both of these lights were lit at the time.

One of the critical questions in this case arose when the following discussion took place, as one of the attorneys for the plaintiff began his closing argument to the jury:

*"Mr. Ance:* Five years ago, on January 22, 1956, the deceased, John Kujawski, Sr., was a robust, healthy man, in the vigor of life; had worked for 40 years at the Tannery and had risen to be superin-

tendent of it; had made his way in life until he was earning some $11,000 per year.

"*Mr. Halstead:* Your Honor, I don't like to interrupt, but there has been no testimony to such earnings.

"*Mr. Ance:* Your Honor, there has been. I remember—

"*The Court:* I remember the figure $11,000 somewhere during the course of the trial.

"*Mr. Ance:* That is right.

"*Mr. Halstead:* That was in the opening statement, Your Honor.

"*Mr. Ance:* No, sir, Edward Kujawski, sitting on the witness stand, gave such testimony.

"*Mr. Halstead:* I believe I am correct—and the jury can tell—that it was contained in the opening statement only.

"*Mr. Ance:* Gentlemen, we will leave it to you, to whether Edward Kujawski did not testify his father was making $11,000 per year."

A careful study of the record made below reveals that there was no testimony whatever on the decedent's earnings. The jury rendered a $35,000 verdict for the plaintiff. The defendant corporation appeals the judgment entered on that verdict.

An attorney may not represent as fact to the jury any information which is not supported by evidence introduced at trial.

"It has been many times ruled that counsel in arguing may not seek to influence the jurors by reference to matters in the nature of evidence not in proof before them, and that the trial judge should promptly repress the attempt as something reprehensible." *Scripps* v. *Reilly* (1877) 35 Mich 371, 390 (24 Am Rep 575).

Upon the defendant's timely objection to this improper argument, the trial court should have promptly repressed it. Although the judge may

have been acting in good faith, his failure to exclude from consideration by the jury the improperly presented matter on the earnings of the decedent was reversible error. *Martin* v. *Fisher* (1906), 143 Mich 462; *Sweezy* v. *Fisher* (1905), 142 Mich 258; *Britton* v. *Michigan Central R. Co.* (1898), 118 Mich 491; *Ross* v. *City of Detroit* (1893) 96 Mich 447.

In view of the decision in this case, it is unnecessary to consider the other allegations of error. The judgment is reversed and the cause remanded for a new trial. Costs on appeal are awarded to the defendant-appellant.

HOLBROOK, P. J., and BURNS, J., concurred.