KOEPEL v. ST. JOSEPH HOSPITAL AND MEDICAL CENTER.

1. APPEAL AND ERROR—MOTION FOR DIRECTED VERDICT—SUFFICIENCY OF EVIDENCE.
   Evidence is examined in the light most favorable to plaintiff in reviewing denial of defendant's motion for directed verdict.

2. NEGLIGENCE—HOSPITAL PATIENT—EVIDENCE.
   Proofs offered, in action by hospital patient against hospital for injury to ulnar nerve caused by hospital attendant improperly

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 886.
[2, 3] 26 Am Jur, Hospitals and Asylums § 12 *et seq.*
[4, 5] 53 Am Jur, Trial §§ 480, 484.

strapping his arm to operating table, that (1) improper strapping could cause the injury complained of, (2) plaintiff complained of discomfort shortly after straps were applied but the attendant did nothing about it, (3) plaintiff noticed numbness in his hand and fingers immediately after the operation, (4) in the opinion of expert medical witness the injury complained of originated when plaintiff was strapped to operating table, and (5) plaintiff had had no prior difficulty with the nerve *held*, to establish a prima facie case of negligence.

3. SAME—PLEADING—EVIDENCE—VARIANCE.

Proofs offered, in action by hospital patient against hospital, that patient's injuries were caused by improperly strapping his wrist to an operating table, so that tension caused by the restraining straps injured the ulnar nerve of one arm, *held*, to be within the scope of complaint that alleged that damage to his ulnar nerve was caused by his being "strapped too tightly to the operating table", as against contention of defendant that complaint only alleged that injury was caused by pulling straps too tightly around plaintiff's wrist, an act that could not in itself cause damage to the ulnar nerve.

4. TRIAL—REMARKS OF COUNSEL—EVIDENCE.

An attorney may not represent as fact to the jury any information which is not supported by evidence introduced at trial.

5. SAME—EVIDENCE—REMARKS OF COUNSEL—SAVING QUESTION FOR REVIEW—PREJUDICIAL ERROR.

Remarks of plaintiff's counsel during trial and final argument in action by plaintiff to recover for injuries allegedly received through negligence of defendant's employee in strapping defendant to a hospital table during an appendectomy operation at defendant hospital, representing that he had subpoenaed the hospital table in question but that it had not been produced by defendant *held*, reversible error, requiring remand for new trial, where no such subpoena had been served on the hospital, defendant objected to such remark during trial and final argument, and also brought the matter to the attention of the court when objecting to the court's instructions to the jury, since an attorney may not represent as fact to the jury any information not supported by evidence at trial, and the failure of the trial court to sustain defendant's objection or properly instruct the jury left the jury with the erroneous impression that defendant was guilty of all the unfavorable insinuations implied by counsel's remark.

Appeal from Houghton; Brennan (Leo J.), J. Submitted Division 3 May 10, 1967, at Marquette. (Docket No. 2,124.) Decided December 1, 1967. Leave to appeal granted March 6, 1968. See 380 Mich 760.

Complaint by Louis D. Koepel against St. Joseph Hospital and Medical Center for damages as the result of personal injuries allegedly sustained through negligence of defendant's employees during the course of an operation. Judgment for plaintiff. Defendant appeals. Reversed and remanded for new trial.

*Wisti, Jaaskelainen & Schrock,* for plaintiff.

*Norman McLean,* for defendant.

BURNS, J. Defendant appeals from a judgment on a jury verdict and claims as his first assignment of error that the trial court should have directed a verdict for defendant at the close of plaintiff's proofs because of plaintiff's failure to establish a prima facie case of negligence. We therefore set forth the evidence in a light most favorable to plaintiff.[1]

On June 22, 1961, Miss Barbara Laurie, an employee of the defendant hospital, prepared the plaintiff for an appendectomy. It was Miss Laurie's responsibility to properly situate plaintiff on the operating table and apply any necessary restraints. In securing plaintiff's left arm, she wrapped his wrist with a cloth and placed the wrist and the cloth in a cushioned wristlet. The wristlet was then attached to an immovable metal bar at the side of the operating able. Although it was customary hos-

---

[1] See *McKay* v. *Hargis* (1958), 351 Mich 409, 412.

pital procedure to lodge a cloth or pad underneath the elbow of a person's arm which was secured at the wrist, plaintiff remembered no such cloth being inserted under his left elbow.

The exact position of plaintiff's arm in relation to his body and the table was demonstrated to the jury. Based upon the verbal description of this demonstration appearing on the record, plaintiff's entire left arm was in an uncomfortable position, pressing against the left side of his body.

Although Miss Laurie had no independent recollection of exactly what happened in this instance, she testified that if a patient complained of discomfort, she would examine and sometimes even remove the restraint in order to discover and alleviate the cause of the discomfort. In this case, plaintiff informed Miss Laurie of the discomfort immediately after she had affixed the plaintiff to the operating table; however, Miss Laurie did not respond. Ten to 15 minutes later the anesthetist arrived and administered sodium pentothal, and within approximately 50 minutes from the time of the strapping a successful appendectomy was completed.

When plaintiff regained his senses in his hospital room, the first thing he noticed was that his whole left hand was all "pins and needles" and his little finger and ring finger were absolutely numb. He reported this condition to his father and 2 of his friends the day of the operation; he also told his nurses and doctor every day that he was in the hospital. The numbness in the 2 fingers persisted, and after an examination by Dr. J. R. Brown, a specialist in neurology at the Mayo Clinic, Rochester, Minnesota, plaintiff learned that there was an impairment of the conduction of nerve impulses in the left ulnar nerve which supplies sensation to half of the ring finger, the little finger and the heel of the hand. The ulnar nerve travels through the inner

side of the upper arm, behind the elbow in the region that is commonly known as the "crazy bone" and near the surface at this particular point.

Prior to the appendectomy plaintiff had experienced no difficulty with the nerve or fingers.

Dr. Brown, based upon the history given to him by the plaintiff, was of the opinion that the ulnar nerve injury originated at the time when plaintiff was strapped to the operating table. Both plaintiff's attending physician during the appendectomy and Miss Laurie acknowledged that care must be exercised in strapping a patient to the operating table and that the ulnar nerve may be damaged if one's arm is improperly positioned on the table.

The evidence outlined above sufficiently establishes a prima facie case of negligence, i.e., that defendant owed a duty to plaintiff and that there was a breach of that duty by defendant which was the proximate cause of injury to plaintiff. See *Gadde v. Michigan Consolidated Gas Company* (1966), 377 Mich 117, 126. This conclusion, however, does not completely resolve the first issue because it is defendant's further claim that negligence was not affirmatively proved in the manner alleged in the complaint. See *Automobile Insurance Company of Hartford, Conn. v. Pere Marquette R. Co.* (1948), 322 Mich 468.

Paragraph 9 of plaintiff's complaint alleged:

"That the said defendant breached its duty to your plaintiff under the common law in the following particulars and that such breach of duty was negligence which was the proximate cause of plaintiff's injuries more particularly described hereinafter:

"(a) That the said defendant, by its employees, failed to properly inspect the strapping of your plaintiff upon the operating room table.

"(b) That the said defendant, through its employees, failed to properly examine the strapping

to ascertain whether or not the strapping was in any way interfering with the circulation in plaintiff's body and arms and had they properly inspected the strapping they would have discovered and would have known that plaintiff was strapped too tightly to the operating room table and that his circulation was being impaired and that he would suffer from other permanent, crippling disability.

"(c) That the said defendant, through its employees, failed to heed the warnings of your plaintiff as he was strapped upon the operating room table when the plaintiff advised the defendant of the fact that he was strapped too tightly and experiencing pain and discomfort in his left arm because of the strapping being too tight.

"(d) That the said defendant was otherwise generally careless and negligent in and about the premises in the method and manner in which they handled plaintiff prior to being placed into the operating room for surgery."

Defendant would have this court believe that the strapping process referred to above and throughout the complaint consisted of solely pulling the wristlet straps too tight around plaintiff's wrist—an act which in itself could not cause damage to the ulnar nerve. Such a narrow interpretation is unwarranted. It is our opinion that the proofs regarding the relative position of plaintiff's body and the tension of all the straps which were restraining plaintiff readily conform to the general language of the complaint, "strapped too tightly to the operating room table."

The jury had the benefit of observing the plaintiff demonstrate his position and noting whether damaging pressure could be exerted on the vulnerable ulnar nerve. The trial court was correct in denying defendant's motion for directed verdict.

Defendant's second issue is set forth in its brief as follows:

"Whether plaintiff's attorney's improper references to an unserved subpoena for the production of the operating table, certain of the court's rulings on evidence, and certain errors in instructions to the jury were prejudicial to the defendant and warrant a reversal or new trial."

During the trial of this case, counsel for plaintiff stated that he had subpoenaed the operating room table. The truth of the matter was that he had subpoenaed the wrong person (the anesthetist) to produce the table. The anesthetist, Maude Hill, testified on behalf of plaintiff, and in the course of her examination it became obvious (if indeed it wasn't already known to counsel) that she was not an employee of the hospital and could not be bound to produce the table which was not under her control.

During plaintiff's case in chief no questions were asked regarding the whereabouts of the operating room table. The objectionable statement first arose in asserting an objection to an account of an experiment conducted by defense counsel on the operating room table in the hospital; plaintiff's attorney argued:

"(*Counsel for plaintiff*): I am going to object, Your Honor.

"They could have brought the operating room table here. *In fact, I subpoenaed.* I was not invited over there into the operating room. I would like to see it, so I would know what he (defense counsel) did.

"*The Court:* I am going to sustain the objection. There is no opportunity here for cross-examination at all, except from the Sister now on the stand. Even the table is not here that you refer to." (Emphasis supplied.)

Later in the trial defendant's hospital administrator, Sister Jean Francis, testified that the hospi-

tal had not been served with a subpoena to produce an operating table.

In the rebuttal argument, counsel for plaintiff commented as follows:

"I want to comment about the demonstration put on here by the defendant's counsel. Did he demonstrate in attempting to move his hand in the wrist gauntlet when it was down on the side? No. Did they bring the operating room table here into the courtroom so you could see it and demonstrate with the actual operating table? No. We subpoenaed it but it did not show up.

"*Mr. McLean.* Objection, your Honor.

"*The Court.* Just a minute.

"*Mr. Wisti.* I have got the sheriff's return of service showing it. It is on file, your Honor.

"*The Court.* Objection overruled."

When plaintiff's attorney made the above-quoted references to the subpoena, he knew or should have known of his mistake in requesting the wrong person to produce the table. It was error for him to claim before the jury that he had subpoenaed the operating table. An attorney may not represent as fact to the jury any information which is not supported by evidence introduced at trial. *Kujawski* v. *Boyne Mountain Lodge, Inc.* (1966), 3 Mich App 333.[2]

Sister Jean Francis cured the first erroneous reference by pointing out that the hospital had received no such subpoena. Had no further mention

---

[2] Although the *Kujawski Case, supra,* was reversed by the Supreme Court in 379 Mich 381 primarily on the ground that the assignment of error was not properly saved for review, the proposition of law for which it is cited above remained undisturbed by the Supreme Court. In the case at hand defendant's attorney promptly objected to the offensive references made by opposing counsel and repeated his claim during the time allowed for objections to the court's instructions to the jury, thus giving the trial court ample opportunity to correct the error and preserving the objection for appellate review.

of the misguided subpoena been made, there would be no cause for reversal. However, counsel for plaintiff renewed the issue in his closing argument. When the judge overruled defendant's objection without examining the court files to determine the truth or falsity of the fact represented, the impression was left with the jury that the hospital or Sister Jean Francis was guilty of all the unfavorable insinuations implied by counsel's remarks.

Reversed and remanded for a new trial. Costs to appellants.

FITZGERALD, P. J., and HOLBROOK, J., concurred.