FIREMENS MUTUAL INSURANCE COMPANY *v.* MUSKOVITZ
& PERSHIN & SONS, INC.

1. WITNESSES—OPPOSITE PARTY—BINDING EFFECT—IMPEACHMENT.
A party who calls the opposite party, his employees, or agents,
is not bound to accept the witness's answers as being true;
the calling party may dispute or contradict the opposite party's
testimony by submission of proper proofs (MCLA § 600.2161;
GCR 1963, 507.4).

2. WITNESSES—OPPOSITE PARTY—WEIGHT—BINDING EFFECT.
The testimony of a party's employees, called by the opposite
party, is to be weighed and considered the same as that of
any other witness and may be disbelieved upon the admission
of other proofs tending to contradict their testimony (MCLA
§ 600.2161; GCR 1963, 507.4).

3. EVIDENCE—EXPERTS—OPINION—POINT OF ORIGIN AND CAUSE OF
FIRE.
Expert opinion evidence was properly introduced to establish
the point of origin and cause of a fire, where plaintiff con-
tended the fire was caused by the negligent use of an acetylene
torch.

4. NEGLIGENCE—EVIDENCE—CIRCUMSTANTIAL EVIDENCE—FIRES.
Conclusion that defendant's employees, who were using acetylene
torches to install an air conditioning unit in an apartment
building under construction, negligently caused a fire, which
damaged the apartment complex, was correct where plaintiff's
expert witnesses testified as to the point of origin and cause
of the fire, showing the employees' negligence, and the trial
judge, as the trier of fact, saw and heard all the witnesses
and was able to judge their credibility.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Witnesses § 792 *et seq.*
[2] 58 Am Jur, Witnesses § 797.
[3, 4] 35 Am Jur 2d, Fires § 55.

Appeal from Wayne, Thomas Roumell, J.  Submitted Division 1 January 12, 1971, at Detroit. (Docket No. 8933.)  Decided April 22, 1971.  Leave to appeal denied, 385 Mich 772.

Complaint by Firemens Mutual Insurance Company, as subrogee of Melron Construction Company, against Muskovitz & Pershin & Sons, Inc., for damages suffered in a negligently caused fire.  Judgment for plaintiff.  Defendant appeals.  Affirmed.

*Davies, Rudzki & Zeder* (*Peter Pappas,* of counsel), for plaintiff.

*Stanley H. Maples,* for defendant.

Before: V. J. BRENNAN, P. J., and FITZGERALD and LEVIN, JJ.

FITZGERALD, J.  The present appeal arises from an action in negligence seeking reimbursement for damages resulting from an extensive fire in a newly constructed apartment building in the City of Troy. Plaintiff insurance company is the subrogee of the Melron Construction Company, owner and builder of the Somerset Park apartment complex in Troy, Michigan.  Defendant Muskovitz & Pershin & Sons, Inc., are plumbing and heating contractors who were in the process of installing an air conditioning unit in the apartment house at the time of the fire. Plaintiff paid its subrogor the amount of its damages and commenced action against defendants.

The case was tried without a jury, and the court, having found defendant negligent in causing the fire, awarded damages to plaintiff in the amount of $95,657.16.  Defendant's motion for new trial was denied and it now appeals from the decision of the trial court.

On April 25, 1967, in the early morning hours, the fire was discovered on the second floor of building 79, a two-story, 20-unit apartment building under construction in the Somerset complex. Before the fire was extinguished, the building had incurred a considerable amount of damage. It was plaintiff's contention during the trial that defendant's pipefitters negligently caused the fire during the time that they were installing an air conditioning unit in the hallway approximately eight to twelve hours before the fire was discovered. The two pipefitters testified that they began work at 12:30 p.m., on April 24, 1967, and they finished "sweating" the pipe joints around 1:30 or 1:45 p.m., and remained on the job site until 4:20 p.m., when they left the job site.

The purpose of the operation was to prepare the copper tubing and the accompanying soldered-on-joint for a certain air conditioning unit which was to be attached to the protruding copper tubing by defendant's employees. This particular operation necessitated the use of an acetylene hand torch to "sweat" elbows and nipples on the copper stubs projecting beyond the wall.

Testimony elicited from Mr. Orval Green, a fire repair contractor, indicated that the unit which defendant's employees installed was "exactly in the center or very close to the center of the area that was completely burned out".

The first question which we shall address concerns the cross-examination of defendant's two employees pursuant to GCR 1963, 507.4, and MCLA § 600.2161 (Stat Ann 1970 Cum Supp § 27A.2161) and whether plaintiff became bound by their testimony as being the truth of the matter so stated.

The testimony of these employees was disputed and contradicted by other proofs. Plaintiff's three

experts testified as to their opinion of the origin of the fire.

The applicable court rule and statute on the cross-examination of the adverse parties reads as follows, GCR 1963, 507.4:

"Parties or persons who were their employees or agents at the time of the happening of the transaction out of which the action arose, when called as witnesses by the opposite party, may be cross-examined by the party calling them and the testimony given by such persons may be contradicted and impeached."

MCLA § 600.2161 (Stat Ann 1970 Cum Supp § 27A-.2161) reads as follows:

"In any suit or proceeding in any court in this State either party, if he shall call as a witness in his behalf, the opposite party, employee or agent of said opposite party, or any person who at the time of the happening of the transaction out of which suit or proceeding grew, was an employee or agent of the opposite party, shall have the right to cross-examine such witness the same as if he were called by the opposite party; and the answers of such witness shall not interfere with the right of such party to introduce evidence upon any issue involved in such suit or proceeding, and the party so calling and examining such witness shall not be bound to accept such answers as true."

It would appear from a reading of the statute under which plaintiff called defendant's employees that plaintiff is not bound to accept these answers as being true. It also seems clear that plaintiff was free to dispute or contradict the testimony of these witnesses through submission of proper proofs. In the case of *Gregg* v. *Goodsell* (1962), 365 Mich 685, it was also argued that plaintiff, having called the

defendant for cross-examination, was bound by the testimony given. In rejecting such reasoning, the Supreme Court stated:

"This Court has recognized in a number of decisions that a party litigant calling the opposite party for cross-examination under the statute, is bound by the testimony elicited unless such testimony is contradicted by other proofs or is inherently improbable or incredible."

The testimony elicited during the trial from defendant's employees is to be weighed and considered the same as that of any other witness and may be disbelieved upon the admission of other proofs tending to contradict their testimony. *Petrosky* v. *Dziurman* (1962), 367 Mich 539, 548; *Gadde* v. *Michigan Consolidated Gas Co.* (1966), 377 Mich 117, 123, 128. See also *Phillips* v. *Phillips* (1970), 29 Mich App 127.

We conclude that plaintiff was not bound by the testimony of the two pipefitters. In addition, the trial court, who heard the testimony of defendant's two witnesses and observed their demeanor, found them almost incapable of belief.

Next we shall consider whether the trial court erred in permitting plaintiff's expert witnesses to express their opinion as to the cause or point of origin of the fire. Defendant relies upon several early Michigan cases which hold that expert testimony is not admissible as to the source or point of origin of a fire.

An examination of the authorities reveals the case of *Dudek* v. *Popp* (1964), 373 Mich 300, which was an automobile negligence case where the investigating officer was allowed to testify as to the point of impact of an accident. In reviewing this expert testimony, the Court stated, at 306, 307, as follows:

"Historically, opinion evidence as to cause and effect in areas of ordinary human experience has been barred, on the reasonable assumption that such determination is attainable by the jurors themselves. We know, however, a definitive trend toward the acceptance of police officers with extensive experience in accident investigations as 'experts' and in consequence the allowance (within limits) of their opinion evidence. These opinions have included the point of impact (*Zelayeta* v. *Pacific Greyhound Lines,* 104 Cal App 2d 716 [232 P2d 5721]), braking and stopping distances (*Kerr* v. *Caraway* [Fla], 78 So 2d 571).

"We align ourselves with the authorities which hold that one properly qualified in accident investigative background may testify either from personal observation or from properly authenticated and admitted exhibits that, in his opinion, certain marks are skid marks and that they were made by a given motor vehicle and his reasons therefor. On the same basis and for the same reasons, he may point out in his opinion the point of impact."

It should be noted that expert testimony has been allowed by this Court in *Great American Insurance Co.* v. *Michigan Consolidated Gas Co.* (1968), 13 Mich App 410, 417, because "the facts surrounding the ignition of gas or gasoline are ordinarily beyond the common knowledge or experience of ordinary people and thus testimony of an expert or skilled witness on the subject would aid the jury in reaching a proper conclusion."

There is no question but that the plaintiff's expert witnesses were qualified to testify to all matters regarding the fire, except the exact cause of that fire. After extensive discussion and deliberation, the trial court ruled that expert opinion evidence could be introduced to establish the point of origin and cause of the fire in light of the prevailing rule

of *Dudek* and GCR 1963, 605. The court was correct in this regard.

Because plaintiff could produce no eyewitnesses who were present at the time the fire started and who observed the manner of operation of defendant's pipefitters and could testify to their negligence in their installation, the negligence of the pipefitters had to be established through circumstantial evidence. Here defendant raises his third point of error, stating that "plaintiff's evidence in this regard fell far short" and that "the plaintiff did not prove by the balance of probability that it was the defendant's employees who negligently caused the fire. Therefore, plaintiff's case fails because it rests on speculations and conjecture."

The leading case defendant cites in this regard is *Kaminski* v. *Grand T.W.R. Co.* (1956), 347 Mich 417. In that case there was, likewise, no witness present who saw defendant's train strike the gondola cart and send it careening into the plaintiff. There was however, substantial other evidence to support this seemingly solely logical conclusion and the possible alternatives were highly unlikely as they are in the instant case.

*Kaminski, supra,* itself, actually offers the strongest support for plaintiff's position. Further support is supplied by the recent case of *Gadde* v. *Michigan Consolidated Gas Co.* (1966), 377 Mich 117, which involved the explosion of plaintiff's gas stove. The circumstantial evidence which was strong enough to support an inference leading to a finding of negligence was that defendant's employee worked on the stove; that no one used or touched the stove afterwards except the plaintiff; that she did nothing that she had not done many times in the 18 years she had owned the stove; that the gas exploded when she opened the oven door; that the explosion oc-

curred a matter of hours after the service man left; and that this was consistent with a theory that it would take that long for enough gas to accumulate to cause an explosion.  The Court noted, 377 Mich 126, 127:

"There may have been negligence by Getsoian [the serviceman] either in causing a leak or in failing to discover a leak which a trained serviceman should have discovered while working on the stove. When the stove was examined the next day, Basset [the experienced serviceman dispatched the next day by the gas company] found that the oven had a substantial gas leak that had not been created by the explosion.  The above facts and Getsoian's proximity to the occurrence are sufficient circumstances from which reasonable men might conclude that he caused or was responsible for the explosion."

The facts, together with the trial judge's opportunity to see and hear the witnesses and, as a trier of fact in this case, to judge their credibility, can lead only to the conclusion that the court's ruling was correct and should be affirmed.

Affirmed.  Costs to appellee.

All concurred.